## ELIZABETH BIZZOCO v. LEON CHINITZ ET AL.
### (12255)

PETERS, HEALEY, SHEA, GRILLO and F. HENNESSY, Js.

Argued April 12—decision released May 29, 1984

*Dean F. Radke,* for the appellants (defendants).

*Charles E. Moller, Jr.,* for the appellee (plaintiff).

PETERS, J. This case concerns the personal liability of an accommodation endorser of a corporate note and the avoidability of the endorser's transfer of his property to his wife. The plaintiff, Elizabeth Bizzoco, brought an action against Leon Chinitz to recover amounts due on six defaulted promissory notes, and against Leon Chinitz and his wife Mildred Chinitz to set aside as fraudulent a conveyance of property from Leon to Mildred. The trial court found five of the six notes to be uncollectible because they were usurious, but rendered judgment for the plaintiff on the remaining note and on the challenged conveyance. The defendants have appealed.

The trial court found the following facts. The F. H. Crygier Tobacco Company from 1971 to 1976 borrowed moneys totalling $137,000 in the form of six promissory notes payable to the plaintiff. The defendant Leon Chinitz was the president of the corporation and owned 50 percent of its shares. His brother Martin,[1] who was its vice president, and his father Nathan owned the remaining shares. All of the promissory notes were drafted by the defendant. The notes which the trial

---

[1] Martin Chinitz was originally a named codefendant in this action. After he had been discharged in bankruptcy, the case against him was withdrawn.

court held unenforceable because of usury[2] were instruments which had three co-makers: the corporation, the defendant and his brother. These notes expressly indicated that all the co-makers were individually and collectively responsible for payment. The remaining note, the fifth in chronological sequence, which is the subject of this appeal, was a note in the amount of $67,000 signed on its face by a single maker, the corporation, and endorsed on its back by the defendant. This note was intended to bear interest at the rate of 18 percent, a lawful rate for corporate borrowers. The corporation had repaid $97,880 of the total amount borrowed on all six notes when it ceased making further payments. On August 15, 1977, it filed a voluntary petition in bankruptcy and was subsequently discharged.

The defendant Leon Chinitz conveyed his interest in real estate at 46 Mohawk Drive, West Hartford, the family home, to his wife, for no consideration, on June 28, 1977. Leon Chinitz had paid all of the consideration for this property when it was acquired, and had paid all of the payments required to discharge its mortgage. After this conveyance, Leon Chinitz was unable to pay the plaintiff's debt. The conveyance was made at a time when Leon Chinitz knew that the corporation was in financial trouble. He was then trying to sell it on a "wash sale basis," an exchange of its assets for an assumption of its indebtedness.

On the basis of this factual record, the trial court held that the defendant Leon Chinitz was obligated to the plaintiff in the amount of $39,120, plus attorney's fees in the amount of $5868, plus costs. The court further

---

[2] The trial court held that the first four notes were intended to bear a rate of interest that exceeded the 18 percent rate permissible for corporations and that the sixth note exceeded the 12 percent rate permissible for individuals. Under General Statutes §§ 37-4, 37-8 and 37-9, the defendant Leon Chinitz was therefore held not to be liable, in his capacity as co-maker, upon any of those five notes.

held that the June 28, 1977 conveyance of the family home was null and void as to the plaintiff. The defendants' appeal challenges each of these conclusions. We shall consider first those claims that relate to the personal liability of Leon Chinitz on the promissory note for $67,000, and then the claim that relates to the fraudulent conveyance. We find no error.

I

The defendant Leon Chinitz raises three claims of error with regard to the personal judgment against him on the promissory note which he endorsed. He argues that the trial court erred in finding: (1) that the note represented a corporate debt and that it was not usurious as to him; (2) that the amount due the plaintiff was the $39,120 claimed in her complaint; and (3) that the plaintiff was entitled to an attorney's fee in the amount of $5868. These claims are unpersuasive.

The defendant's principal argument is that the promissory note was usurious as to him and therefore unenforceable. He concedes that if his role was that of a guarantor of a corporate note, then he could not successfully rely on a defense of usury when, as here, that defense was unavailable to the underlying corporate borrower. *Associated East Mortgage Co.* v. *Highland Park, Inc.,* 172 Conn. 395, 405–406, 374 A.2d 1070 (1977). He maintains, however, that *Associated East Mortgage Co.* is inapposite because he was not a guarantor. He claims instead that because of his ownership of 50 percent of the shares of the corporate borrower, he was primarily liable on the fifth note as a co-maker and not as guarantor, and hence was entitled to the same personal defense that the trial court had recognized with regard to the sixth promissory note.

The difficulty with this argument is that it finds no factual support in the record. Under the Uniform Commercial Code, the defendant's anomalous endorsement,

out of the chain of title, gave notice of its accommodation character. General Statutes § 42a-3-415 (4).[3] Accommodation status, itself a form of guaranty, makes an accommodation party "liable in the capacity in which he has signed." General Statutes § 42a-3-415 (2); see generally Peters, "Suretyship Under Article 3 of the Uniform Commercial Code," 77 Yale L.J. 833, 844–61 (1968); White & Summers, Uniform Commercial Code (2d Ed. 1980) §§ 13-12, 13-13. Between the immediate parties, the inferences normally to be drawn from what appears to be an accommodation endorsement may perhaps be rebutted, because, in such cases, General Statutes § 42a-3-415 (3) states that "the accommodation character may be shown by oral proof." A statute that permits parol variation does not, however, compel the trier of fact to conclude that the variation has been proven. The defendant has the burden of rebutting the statutory inference that he was an accommodation endorser who, under General Statutes § 42a-3-414 (1),[4]

[3] "[General Statutes] Sec. 42a-3-415. CONTRACT OF ACCOMMODATION PARTY. (1) An accommodation party is one who signs the instrument in any capacity for the purpose of lending his name to another party to it.

"(2) When the instrument has been taken for value before it is due the accommodation party is liable in the capacity in which he has signed even though the taker knows of the accommodation.

"(3) As against a holder in due course and without notice of the accommodation oral proof of the accommodation is not admissible to give the accommodation party the benefit of discharges dependent on his character as such. In other cases the accommodation character may be shown by oral proof.

"(4) An endorsement which shows that it is not in the chain of title is notice of its accommodation character.

"(5) An accommodation party is not liable to the party accommodated, and if he pays the instrument has a right of recourse on the instrument against such party."

[4] "[General Statutes] Sec. 42a-3-414. CONTRACT OF ENDORSER; ORDER OF LIABILITY. (1) Unless the endorsement otherwise specifies, as by such words as 'without recourse,' every endorser engages that upon dishonor and any necessary notice of dishonor and protest he will pay the instrument according to its tenor at the time of his endorsement to the holder or to any subsequent endorser who takes it up, even though the endorser who takes it up was not obligated to do so."

had engaged to pay the instrument, according to its tenor at the time of his endorsement.[5] The defendant, who himself testified that the loan was exclusively a corporate debt to be repaid out of corporate moneys, has failed to prove that his status on the instrument was anything other than what it appeared to be.

The defendant's next claim is that the trial court erred in calculating the amount of his indebtedness on the $67,000 promissory note. This claim is twofold. First, he maintains that the public policy against usury requires that all payments made to the plaintiff after the issuance of this note be allocated to reduction of this indebtedness. Such an allocation would reduce the outstanding balance to $1130 rather than the amount of $39,120 claimed by the plaintiff. Second, he maintains that, even if some of the payments were properly allocated to the usurious notes, the remaining weekly payments received by the plaintiff after the $67,000 loan totalled $30,360 so that the maximum amount of his liability should be $36,640.

We conclude that the trial court's judgment was correct. The defendant himself admitted that all of the payments made on all of the notes represented payments of interest rather than a return of principal. In these circumstances, our usury statute is of no avail to him, for it expressly provides that voluntary payments of interest may not be "set off or [recovered] back, by any proceeding in court." General Statutes § 37-2; *Matz* v. *Arick*, 76 Conn. 388, 390–91, 56 A. 630 (1904); *Hinman*

---

[5] We do not mean to intimate that an accommodation party in another capacity, for example, an accommodation co-maker, would have been able to rely on a defense of usury that was unavailable to the party accommodated. Although an accommodation party is entitled to assert some special defenses arising out of his suretyship status, General Statutes §§ 42a-3-415 (3), 42a-3-606, in general, he must pay an instrument "according to its tenor" whenever the underlying obligor, the accommodated party, has no defense. See White & Summers, Uniform Commercial Code (2d Ed. 1980) §§ 13-12 through 13-14.

v. *Goodyear*, 56 Conn. 210, 213–15, 14 A. 804 (1888). Furthermore, the plaintiff would have been entitled to recover all of the unpaid principal, i.e., $67,000, rather than the lesser amount which she sought in her complaint. While oral renunciations of negotiable instruments, like oral unexecuted gifts, are not fully effective; see General Statutes § 42a-3-605;[6] this defendant has shown no prejudice from the plaintiff's failure to manifest her largesse in a more formal fashion.

Finally, the defendant claims that the trial court improperly awarded the plaintiff an attorney's fee of $5868, which was 15 percent of the amount of the judgment. The $67,000 promissory note expressly authorized the recovery of a reasonable attorney's fee. As we have repeatedly held, an award under such a clause requires an evidentiary showing of reasonableness. *Appliances, Inc.* v. *Yost*, 186 Conn. 673, 680, 443 A.2d 486 (1982); *Storm Associates, Inc.* v. *Baumgold*, 186 Conn. 237, 245–46, 440 A.2d 306 (1982). The defendant argues that the evidence at trial was insufficient because there was nothing before the court about the services performed by the plaintiff's counsel or about the hours that counsel had spent on the case. We disagree. As we emphasized in *Appliances, Inc.* v. *Yost*, supra, 680–81, and *Piantedosi* v. *Floridia*, 186 Conn. 275, 279, 440 A.2d 977 (1982), courts may rely on their general knowledge of what has occurred at the proceedings before them to supply evidence in support of an award of attorney's fees. In this case, the trial court

---

[6] "[General Statutes] Sec. 42a-3-605. CANCELLATION AND RENUNCIATION. (1) The holder of an instrument may even without consideration discharge any party (a) in any manner apparent on the face of the instrument or the endorsement, as by intentionally cancelling the instrument or the party's signature by destruction or mutilation, or by striking out the party's signature; or (b) by renouncing his rights by a writing signed and delivered or by surrender of the instrument to the party to be discharged.

(2) Neither cancellation nor renunciation without surrender of the instrument affects the title thereto."

knew that the plaintiff's counsel had taken a lengthy deposition, had engaged in a two-day trial, and had prepared a post-trial brief. The court was in a position to evaluate the complexity of the issues presented and the skill with which counsel had dealt with these issues. This record was sufficient to support the award made by the court.

## II

The defendants Leon and Mildred Chinitz claim that the trial court erred in concluding that the transfer to Mildred of Leon Chinitz' interest in their West Hartford family home was a fraudulent conveyance under General Statutes § 52-552.[7] The trial court concluded that the plaintiff was entitled to have this transfer set aside on two grounds: (1) the transfer was without adequate consideration, was made with the intent to avoid the debt to the plaintiff, and left Leon Chinitz unable to pay the plaintiff's debt; and (2) at the time of the transfer, Mildred Chinitz knew or should have known of Leon Chinitz' indebtedness to the plaintiff and knowingly aided and abetted him in the accomplishment of the transfer. The defendants concede that there was inadequate consideration for the transfer, but challenge the factual basis for the remainder of the trial court's determinations.

The statute governing fraudulent conveyances, § 52-552, provides that "[a]ll fraudulent conveyances . . . made or contrived with intent to avoid any debt or duty belonging to others, shall, notwithstanding any pretended consideration therefor, be void as against those persons only . . . to whom such debt or duty

---

[7] "[General Statutes] Sec. 52-552. FRAUDULENT CONVEYANCES, JUDGMENTS, CONTRACTS, WHEN VOID. All fraudulent conveyances, suits, judgments, executions or contracts, made or contrived with intent to avoid any debt or duty belonging to others, shall, notwithstanding any pretended consideration therefor, be void as against those persons only, their heirs, executors, administrators or assigns, to whom such debt or duty belongs."

belongs." A person to whom the grantor was indebted and who wishes to avoid the conveyance has the burden of showing either (1) that the conveyance was made without substantial consideration and rendered the transferor unable to meet his obligation or (2) that the conveyance was made with a fraudulent intent in which the grantee participated. *Zapolsky* v. *Sacks,* 191 Conn. 194, 200, 464 A.2d 30 (1983); *Denison Development Co.* v. *Gunther,* 189 Conn. 333, 335, 455 A.2d 1340 (1983); *Molitor* v. *Molitor,* 184 Conn. 530, 535–36, 440 A.2d 215 (1981). Since the plaintiff can prevail if she has met her burden on either one of these tests, we need not consider them both. We conclude that there was sufficient evidence to support the trial court's finding that "[a]fter the conveyance of his interest in [the] real estate he [Leon Chinitz] was unable to pay the plaintiff's debt."

In challenging the finding that, after the transfer, the defendant Leon Chinitz was unable to pay his existing debt to the plaintiff, the defendants argue that the trial court overlooked Leon Chinitz' ownership of 50 percent of the shares of the Crygier Company. It was, they claim, incumbent upon the plaintiff to prove the total amount of the corporate debts and the corporate assets on June 28, 1977, the date of the challenged transfer. This asset was not necessarily worthless at that time, even though a bankruptcy petition was voluntarily filed on August 15, 1977.

This argument overlooks the inferences that the trier of fact was entitled to draw from the evidence at the trial about the acknowledged financial difficulties of the company at the time of the transfer. The defendant Leon Chinitz testified that he had been contemplating a "wash sale" of the company, an exchange of its assets for payment of its debts. The trial court could reasonably find that the contemplated wash sale indicated that the company had little or no net value upon which the

defendant could rely to pay the debt owed to the plaintiff. The defendant further testified that he did not know whether the plaintiff's promissory notes would have been included in a wash sale. The trial court was entitled to determine, on this record, that the defendant's stock holdings in the corporation were not of sufficient value to enable the defendant to pay his continuing debt to the plaintiff after the transfer of his interest in the family home.

There is no error.

In this opinion the other judges concurred.