[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I.
This is an action by the plaintiff corporation to recover damages for nonpayment for land surveying and Phyllis Cuomo pursuant to a written agreement (Plaintiff's Exhibit 1) signed by the plaintiff about January 31, 1988 and received by the plaintiff after defendant's signing on or about February 12, 1988. With the agreement, defendant submitted a $1,500 retainer to the plaintiff.
The agreement provided that the plaintiff would prepare an "A-2" land survey and engineered site plan for defendant's property that would satisfy the Groton Planning Commission (sic) in return for payment by the defendant in an amount which would be determined according to the various hourly rates of the plaintiff's employees involved.
The parties anticipated that the job would take about three weeks but no total or limit was recited in the contract for the job. However, the defendant testified that she was under the impression from Rowley that the job would be done for a total of about $2,500.
Shortly after receipt of the agreement and retainer, plaintiff's employees began to do the field work and investigation required by said agreement.
The defendant's property consists of an irregularly shaped parcel of land, about one-half acre, with buildings, located at 15-19 Fort Hill Road, Groton.
Near the end of February, the plaintiff's crew encountered difficulty establishing one of the boundary lines, which required them to extend their field work and investigation to adjoining properties. Although this involved substantial additional time and effort, the plaintiff never informed the defendant of this, nor of its cost and the defendant did not learn of it until on or about March 22, 1988, when she received a bill from the plaintiff for $3,913 ($5,413 minus the $1,500 retainer). Later, the defendant called Rowley, objected to the amount of the bill, and met Rowley on March 24, 1988 to discuss the job.
Thereafter, the defendant was advised by plaintiff's president by letter dated March 28, 1988 (Plaintiff's Exhibit 15), that no further work would be done unless payment of the balance due was received. Despite this letter, the plaintiff's personnel continued to work on the job until April 7, 1988. The plaintiff now claims a balance due of $9,456, after credit CT Page 512 to the defendant of the $1,500 retainer plus interest and attorney's fees. The plaintiff never prepared or delivered the completed A-2 survey or engineered site plan to the defendant.
The professional services plaintiff claims it performed pursuant to the agreement consisted largely of survey field work, computer work, topography, examination of land records, maps and deeds, and the drafting of a base map for the A-2 survey.
The contract expressly provides that if the defendant changed the scope of the work, she would be required to pay for any additional work involved. However, there is no evidence that she changed the scope of the work performed or that she authorized any additional work. Therefore, the plaintiff cannot rely on the express contract to recover for the additional work. If plaintiff is to recover at all it must be on the theories of implied contract, quantum meruit, or unjust enrichment.
As the plaintiff failed to plead or prove claims for recovery under any of these theories, which are claims for equitable relief, no recovery can be had by the plaintiff on any of them. See Practice Book Section 139. Bronson Townsend Co. v. Battistoni, 167 Conn. 321, 327 (1974).
At the March 28, 1988 meeting, plaintiff's president was unable to indicate why plaintiff's first invoice was so high. The Court finds that the work proceeded without Rowley's supervision or attention to the need to inform the defendant about the additional work. Such notice would have allowed the defendant the option of terminating the contract, agreeing to the additional work or renegotiating the contract.
Therefore, no recovery can be had by the plaintiff for the additional work, or the work performed after the March 24, 1988 meeting, as the defendant told the plaintiff's president at that meeting not to do any further work on the job.
The Court finds that the amount of the services performed by the plaintiff pursuant to the contract and after deducting for discrepancies in plaintiff's records and work performed that was not contemplated by the parties, is $3,438. After deducting the $1,500 retainer paid by the defendant, the balance due plaintiff for such services is $1,938; and that the plaintiff is entitled to interest on the $1,938 at the rate of 1 percent per month commencing April 14, 1988.
Turning to plaintiff's claim for reasonable CT Page 513 attorney's fees provided for in the contract, plaintiff's attorney asserts he expended 61.6 hours on the case at an hourly rate of $125, for a total of $7,700. An award of attorney's fees under a contract provision requires an evidentiary showing of reasonableness. Bizzoco v. Chinitz,193 Conn. 304, 310 (1984). Courts may also rely on their general knowledge of what would be a reasonable attorney's fee for services which are fairly stated and described. See Appliances, Inc. v. Yost, 186 Conn. 673, 680-1 (1982) and Piantedosi v. Floridia, 186 Conn. 275, 279 (1982). After considering the entire file, the pleadings, pretrial motions and discovery, the trial itself, and the trial memoranda and briefs; and the Court's general knowledge, and applying the applicable criteria of Rule 1.5 of the Rules of Professional Conduct, the Court finds that a reasonable attorney's fee is $1,750.
 II.
The defendant has asserted four special defenses to plaintiff's complaint. First, the defendant claims that there was no contract between the parties because plaintiff's offer expired by its terms before it was accepted by the defendant. This Court disagrees. The defendant's defense is based on the fact that plaintiff's offer was conditioned on the express provision that defendant's acceptance and retainer be received by plaintiff on or before January 31, 1988. Although this did not occur, defendant's signing of the agreement and mailing of it with the retainer to the plaintiff, who received it on February 12, 1988, was a counteroffer to plaintiff by the defendant which plaintiff accepted when it began to perform the work required. Also, the plaintiff, by the acceptance of the check and the commencement of work, waived the expiration provision which was inserted for its benefit. Either way, there was a contract, and therefore, the first special defense has no merit.
The defendant's second special defense appears to sound in mitigation of the amount claimed for the additional work because of lack of notice to defendant and is sufficiently treated in Part I of this opinion, and therefore has no merit.
The defendant's third special defense asserts a claim that the plaintiff violated General Statutes Section 42-110a et seq., the Connecticut Unfair Trade Practices Act (CUTPA). Again, this Court disagrees. Whatever may be the applicability of the act to a defensive claim, defendant has not met her burden that the plaintiff's actions caused her either an ascertainable loss of money or property or "an CT Page 514 unjustified consumer injury," as is set out in the so-called "cigarette rule" of the Federal Trade Commission adopted by our Supreme Court. See A-G Foods, Inc. v. Pepperidge Farms, Inc., 216 Conn. 200, 215 (1990). Although the plaintiff's bookkeeping discrepancies may have been negligent, the additional work was actually, but improvidently done, and the plaintiff's actions do not rise to the level of an unfair or deceptive trade practice. See A-G Foods, Inc., supra, 215-217.
The defendant's fourth special defense alleges that the agreement was illegal and void because the plaintiff did not comply with the provisions of General Statutes Section 20-306a[1], as it had neither been issued a certificate of registration nor had it designated the persons licensed to practice land surveying or professional engineering. The defendant reasons further that since the licensing statutes carry a criminal penalty, General Statutes Section 20a-310, the contract is illegal and unenforceable. The Court disagrees.
The plaintiff corporation, although incorporated in May 1987, was not registered with the Department of Consumer Protection, as required by General Statutes Section 20-306a or20-306b, nor was it a licensee designated as required by General Statutes Section 20-306a(c), until at least one year after the plaintiff discontinued the defendant's job. However, at all times relevant, it was eligible to be registered under either section of the statute as its principal stockholders and officers, Rowley and Janovics, were and are both licensed professional engineers and Janovics was also a licensed land surveyor.
A. The regulatory statutes requiring licenses for the practice of professions such as professional engineering and land surveying are founded upon the sound policy of the protection of public health and safety, as well as the protection of the public against incompetence and fraud. See E.I.S., Inc. v. Board of Registration, 200 Conn. 145, 149
(1986). See also General Statutes Section 20-299 which defines these two professions and Section 20-302 which contains the requirement for licensure.
The defendant points out that in Design Development, Inc. v. Brignole, 20 Conn. App. 685 (1990), the Appellate Court held that a person holding himself out as an architect could not recover for the rendering of architectural services, because he was not a licensed architect, reasoning that such an unlicensed person subjected himself to a criminal penalty, and that therefore, his contract (for the services) ". . . was rendered illegal, void as against public policy and CT Page 515 unenforceable." Design Development, Inc. v. Brignole, supra, 688.
Here, the individuals responsible for the plaintiff corporation's professional services were licensed, and hence, the ruling in Design Development, Inc., supra, is distinguished from this case. The Court has found no case in Connecticut involving a suit by an unlicensed or unregistered corporation where the services were performed by licensed professionals, save for Connecticut Breweries Co. v. Murphy,81 Conn. 145, 148 (1908); which denied recovery to an unlicensed corporation although its principal was licensed; because the licensing statute involved in that case contained a specific provision that all contracts made in violation of the statute were void and unenforceable. This case is not applicable here, as the regulatory statutes involving professional engineers and land surveyors contain no such prohibition.
The Court, therefore, must interpret the statutory scheme permitting corporations to practice as professional engineering and/or land surveyoring, General Statutes Sections20-306a and 20-306b.
In interpreting our statutes, our Supreme Court has stated:
 "Our interpretation of the requirements of (a statute) is informed by "well defined principles of statutory interpretation that require us to ascertain and give effect to the apparent intent of the legislature" . . . .
 To determine the intent of the legislature, we first consider whether the statutory language "yields a plain and unambiguous resolution" . . . . "If the words are clear and unambiguous, `it is assumed that (they) express the intent of the legislature'. . .; and we need inquire no further" . . . . The words of a statute must be "interpreted according to their ordinary meaning unless their context dictates otherwise" . . . . If the language is ambiguous, the ambiguity is "normally resolved by turning for guidance to the legislative history and the purpose the statute is to serve." (citations omitted) State v. Mattioli, 210 Conn. 573, 576
CT Page 516 (1989).
As the statutory provisions contained in Chapter 391 require that individual professional engineers and/or land surveyors who choose to practice in the corporate form must have individual licenses; that they must hold all of the issued and outstanding stock in the corporation, and are individually liable and responsible for the services performed by them[2]; and that their maps and plans must be individually sealed, the purpose of corporate registration and designation of individual licensees on behalf of the corporation is unclear.
In order to determine that purpose, it is helpful to look to the legislative history, and in proceedings discussing enactment of General Statute Section 20-306a, Rep. Neiditz stated:
 "There are many reasons for engineering firms to use the corporate form. Some of them, because pension provisions under what is generally know (sic) as the Jenkins Field Provision of Federal Tax Legislation. However, there have been in the past objections to the use of the corporate form because of the liability of the professional licensing of the individuals involved. This amendment would allow the corporate form but still provide that everyone doing engineering work be licensed under the engineering law, still be subject to the liability of professional engineering, still be liabel (sic) to professional ethics of the field."
 12 H.R. Proc. Pt. 10, 1967 Sess., p. 119-120.
Public Act Section 87-271 extended the provisions of Sections 20-306a and 20-306b to land surveyors and allowed them to practice in a corporate form.
 The legislative history of Public Act 271 is similar. ". . . this bill does three things. First of all, it allows land surveyors to form corporations. Second, it allows licensed land surveyors to join with licensed architects and licensed engineers to form a corporation. . . ." CT Page 517 Remarks of Rep. Fox, House of Representatives, Proc. 1987 Sess. p. 3937.
A comparison of Sections 20-306a, 20-306b and20-298, a statute which allows architects and professional engineers, individually licensed, to form "a partnership, joint enterprise or association," leads the Court to conclude that their purposes are similar, that is, to allow licensed individuals to practice in a corporate or other form, for tax, pension and other reasons of convenience and not primarily for the public's protection. This conclusion is reinforced by our Supreme Court's stating, when addressing the purpose of General Statutes Section 20-298a in another context, ". . . the statute is concerned only with the manner in which architects and engineers may form partnerships and is not involved in any way with the licensing of either profession." Zapata v. Burns,207 Conn. 496, 503 (1988). The Court concludes, therefore, that the provisions relating to corporate registration and designation of an individual licensee are for administrative reasons only.
As the Connecticut courts have not addressed the precise question here, it is helpful to turn to other jurisdictions. The California courts, when considering cases brought under a very similar statutory scheme enacted for the protection of the public relating to contractors, have adopted a "substantial compliance" test, that is "whether the contractor's substantial compliance with the licensing requirements satisfies the policy of the statute." Asdourian v. Araj, 696 P.2d 95, 100 (Cal. 1985). The California courts have applied the substantial compliance doctrine allowing recovery to unlicensed plaintiffs, where a contractor's license expired before completion of a job, Lattipac, Inc. v. Superior Court, 411 P.2d 564 (1966); where the license was not obtained until after the contract was executed, Gaines v. Eastern Pacific, 186 Cal.Rptr. 421 (1982); and where the entity performing the contract was different from the entity named on the contract, Gatti v. Highland Park Builders, Inc.,166 P.2d 265 (1946); Asdourian v. Araj, supra.
When the California courts found that the substantial compliance doctrine applied, they refused to apply their statutory provisions literally, even though the California statutes prohibited actions brought by unlicensed persons otherwise subject to the statute. (emphasis added). Cal. Bus. Prof. Code, Section 7031.
"If defendant is allowed to defeat plaintiff's legitimate claim on this technical ground, resting on an unnecessarily strict construction of the statutory CT Page 518 provisions. . . the legislative scheme in relation to the licensing of contractors. . . would become, an unwarranted shield for the avoidance of a just obligation." Asdourian, supra, 99.
Here, the individuals supervising and responsible for the corporation's professional engineering and land surveying work were at all times appropriately licensed. Also, the corporation was at all times qualified to obtain a certificate of registration, and in fact, ultimately did so. Moreover, there was no evidence of fraud, deception or incompetence in the performance of the professional services or that the plaintiff corporation or its officers intentionally or wilfully violated General Statutes Sections20-306a or 20-306b, thereby subjecting them to the criminal sanctions of Section 20-310.
It is the general rule that competent persons have the utmost liberty of contracting and their agreements voluntarily and fairly made shall be held valid and enforced in the courts; "The principle that agreements contrary to public policy are void should be applied with caution and only in cases plainly within the reasons on which that doctrine rests. . . . The impropriety injurious to the interests of society which will relieve a party from the obligation he has assumed must be clear and certain before the contract will be found void and unenforceable." Collins v. Sears, Roebuck Co.,164 Conn. 369, 377 (1973).
The Court, under the circumstances of this case, finds that the purpose and policy of General Statutes Sections20-306a and 306b have been met by the plaintiff and finds no such clear and certain "impropriety injurious to the interests of society," which warrants finding the agreement illegal, void as against public policy and unenforceable and adopts the doctrine of substantial compliance. To allow the defendant to escape liability to the plaintiff because of a hypertechnical application of the statute would be unjust.
For the reasons stated, judgment may enter for the plaintiff to recover from the defendant the sum of $1,938, plus interest and attorney's fees of $1,750.
Teller, J.