[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff Nurotocco of Mass. Inc. (Roto-Rooter), is a nationally known sewer drain service company. It commenced suit against its employee, defendant, Mark Kudlach, claiming:
 (a) violation of a non-competition agreement; (b) failure to account for jobs done; and CT Page 8849 (c) theft of monies rightfully due the plaintiff.
The defendant denies these allegations and claims the plaintiff owes him money for commissions due. The defendant alleges that the non-competition clause is unreasonable and was signed under duress. The matter was tried to the court on June 10, and 11, 1993. After both parties rested they agreed to file simultaneous briefs after receipt of the court reporter transcripts. They also agreed to waive the benefit of having the court render a decision until the expiration of 120 days of the date of the filing of briefs. The plaintiff on September 21, 1993, filed its brief. The defendant has not filed a brief. The court will excuse the filing of a brief by the defendant. The court will also excuse the defendant from an "immediate" filing of a waiver of the requirements of Conn. Gen. Stat. 51-183b in accordance with his agreement to do so.
Roto Rooter hired the defendant for its Connecticut office. He, the defendant, had previously worked in plaintiff's Norfolk, Virginia office. Roto Rooter spends substantial monies in national advertising and prides itself in a total guarantee of its' work. Prospective customers call a central Roto-Rooter number and the job is referred to a serviceman like the defendant. The customer pays Roto-Rooter, through the serviceman. The serviceman turns in the money with an invoice and is paid his commission 2-3 weeks later. Employee dishonesty i.e., doing a job and not reporting it to Roto-Rooter is difficult to detect given the high volume of calls and ability of the serviceman to underbid a job "on his own."
Roto-Rooter pays for some training and education of its employees. In 1991 the defendant was offered formal training as a plumber and he enrolled and was reimbursed for courses at Ella Grasso Tech. Also in 1991 the defendant was presented with and signed:
a. Roto-Rooter Services Company Servicemen's Regulations signed April 24, 1991. (Plaintiff's Exhibit 1); and
b. Personal Account Business and Non-compete Agreement signed July 10, 1991. (Plaintiff's Exhibit 2).
In 1992, the defendant received a number of warnings from the plaintiff's production supervisor, Ernest Koch, concerning his, defendant's, job performance; the complaints were from customers CT Page 8850 and building officials and concerned abusive language, lack of uniform, and other matters. On July 28, 1992, the defendant was terminated from employment by the plaintiff.
On July 30, 1992, the defendant and plaintiff's manager, (Mr. Harris and Mr. Koch), met to discuss the financial issues involved with the termination. The plaintiff, Roto-Rooter, prepared and defendant signed a memorandum of that meeting which sought to resolve, in an orderly fashion, the issues then known to exist between the parties. (Plaintiff's Exhibit 10). The defendant read, dated and signed the letter adding the words, "I have read and agree." In this memorandum the parties recognized: (a) defendant would return or buy certain supplies; (b) defendant would return or buy a certain jackhammer. The parties also recognized that the defendant owed plaintiff for a misdirected payment; that defendant owed plaintiff for work needed on a call back; and that plaintiff owed defendant for past due work.
This memorandum is important to the plaintiff's case. Plaintiff testified to it as an attempt to resolve all issues in a fair manner. Defendant agreed he signed it and it was an attempt to wash "the slate".
The same day defendant was discharged and within hours after his discharge he did a job for a Roto-Rooter customer at Villa's General Store in Norwich which he latter billed under his own business. Plaintiff testified it was paid for this job despite defendant's attempt to divert money to his personal business. Within two days of his discharge defendant filed a complaint with the Labor Department seeking unemployment compensation and alleging withholding of wages by the plaintiff. Defendant testified that he lost the Labor Department case and was ordered to reimburse the Department for benefits improperly paid because of his larceny from the company.
Within weeks of his discharge the plaintiff, Roto-Rooter, also became aware of the following irregularities in the defendant's accounts as follows:
1. $62.54 Slocum Invoice; cash received by defendant's but never paid to plaintiff.
2. $544.84 Roy Invoice; work done by defendant under plaintiff name; no payment received by plaintiff; CT Page 8851 and
3. $636.00 Butler Invoice; work done by defendant under plaintiff name; for which no payment was received by plaintiff.
Defendant has attempted to explain these jobs as a mistake or jobs which were rightfully his because of an improper discharge. When confronted with the Roy and Butler jobs being in violation of the rules and regulations and non-competition agreement, defendant answered "life goes on".
The plaintiff because confronted with an apparent Labor Department complaint, and an attempt to obtain an avoidance of the July 30 "agreement" it thought it had. The plaintiff brought the present action to address the issues in this action.
The non-compete agreement was fair and reasonable and should be enforced even if entered into after the employment contract.
The defendant complained of the non-compete agreement. He "had no problem with what was written on (the non-compete agreement)" (Transcript p. 88). His complaint now is that it was presented to him after he was employed and he now claims he was under duress because he feared a discharge. The Connecticut courts have recognized the validity of a non-competition agreement executed after the employment contract and hold that the continuation of employment is adequate consideration in such a case. Rossler v. Burwell, 119 Conn. 289, 293-94. The validity of a non-competition clause is to be tested by criteria as follows:
1. length of restriction;
2. geographic area of restriction;
3. degree of protection to employer;
4. restrictions on employee's employment; and
5. extent of interference with public interest.
See, New Haven Tobacco Co. v. Perrelli, 18 Conn. App. 531 cert. denied 212 Conn. 809 (1989). Applying these criteria to the present agreement the plaintiff argues it is reasonable because CT Page 8852
1. the one year restriction is nominal;
2. the no-geographical limit is needed because of Roto-Rooter's substantial national advertising and warranties which would allow a salesman to advertise as formerly associated with Roto-Rooter;
3. the need for Roto-Rooter to protect its customer lists;
4. salesmen can still perform their work and can even get a customer if such person is dissatisfied with Roto-Rooter; and
5. there has been no evidence that this agreement will unfairly restrict trade and harm the public interest.
The defendant's failure to account to the plaintiff for work done cost the plaintiff revenues for which the defendant owes reimbursement.
The parties both testified that the Roto-Rooter employment contract provided that "call-backs" were the responsibility of the serviceman, i.e. Roto-Rooter guaranteed its work. Defendant did a job for Jablotsky and got paid personally (Plaintiff's Exhibit 5); however, the customer complained to Roto-Rooter, under whose logo the job was done, that the work was improper. Defendant failed to correct the work and plaintiff incurred costs of $1,100.00 to cure the job.
The defendant's actions constitute a reckless indifference to the rights of the plaintiff in complete disregard of the agreements he made with the plaintiff and for which punitive damages should be awarded. See Alaimo v. Royer, 188 Conn. 36,42, 43.
Credibility of the parties is an important issue for the trier of fact when deciding the facts of a particular case. The court observed many discrepancies in the defendant's testimony:
1. he denied the signing of the July 30 agreement and then admitted it when confronted with overwhelming evidence;
2. he denied knowing about the findings of the Labor CT Page 8853 Department and then admitted knowledge;
3. he appeared to be comfortable taking monies clearly due plaintiff under plaintiff's invoices and, in fact, later billing these accounts under his own name. (Plaintiff's Exhibits 3 and 4).
The defendant's actions require the imposition of punitive and exemplary damages, limited to attorneys fees and costs. In Miller v. Kirshner, 225 Conn. 185, 201, our Supreme Court said:
 "Courts have a general knowledge of what would be a reasonable attorney's fee for services which are fairly stated and described." Appliances, Inc. v. Yost, 186 Conn. 673, 680, 443 A.2d 486 (1982). "[C]ourts may rely on their general knowledge of what has occurred at the proceedings before them to supply evidence in support of an award of attorney's fees. . . . The court [is] in a position to evaluate the complexity of the issues presented and the skill with which counsel had dealt with these issues." Bizzoco v. Chinitz, 193 Conn. 304, 310-11, 476 A.2d 572 (1984)."
Defendant took monies rightfully due the plaintiff by rationalizing that the jobs were not property of the plaintiff's. He admitted having in his possession and buying from plaintiff a jackhammer. Common law in Connecticut provides for such damages "when the evidence shows a reckless indifference to the rights of others. . . ." Collens v. New Canaan Water Co.,155 Conn. 477, 489 (1967). Ordinarily the damages awarded are the costs of litigation, including the attorney's fee, less taxable costs. See, Lauder v. Peck, 11 Conn. App. 161, 166.
The plaintiff has prevailed here and proved its case and should be awarded damages on Counts I and II. There is no finding of a damaged reputation. There is no finding for relief under 52-564 Conn. Gen. Stats.
 Commission due the Defendant, $2,206.00 Kudlach per 7/30/92 letter
CT Page 8854
From sums rightfully the plaintiff's as follows:
 A. Zablotsky; plaintiff's $- 837.00 share B. Jackhammer kept (conceded) -727.00 C. Slocum (conceded) -62.54 D. Zablotsky "re-call" done by -1,100.00 plaintiff E. Roy invoice -544.84 F. Butler invoice -636.00 --------- Total sums owed plaintiff $3,907.38 Less due Defendant -2,206.00 --------- $1,701.38
Any commissions "claimed due" on the Villa, Butler, or Slocum jobs are fairly retained by plaintiff as damages for violation of the non-compete agreement. Intentional conduct on the defendant's part is found. In the light of the retention imposed, the court will not award the plaintiff a permanent injunction and more than one year time having passed.
Plaintiff is awarded one thousand dollars ($1,000.00) attorney's fees. Judgment may enter for the plaintiff against the defendant in the amount of $1,701.38 plus $1,000.00 for a total of $2,701.38.
Judgement [Judgment] for the plaintiff on the defendant's counter claim.
LEONARD W. DORSEY STATE TRIAL REFEREE