RONALD F. PETRONELLA, COMMISSIONER OF
LABOR, EX REL. GLENN MAIORANO ET AL. *v.*
VENTURE PARTNERS, LTD., ET AL.
(AC 18759)

Landau, Zarella and O'Connell, Js.

Argued March 21—officially released October 3, 2000

*Robert A. Ziegler*, with whom, on the brief, were *Leslee B. Hill, Laila M. Ghabrial* and *Edward B. Bradley*, for the appellants (defendant Venture Partners, Ltd., et al.).

*Glenn A. Woods*, assistant attorney general, with whom were *Edward F. Reynolds*, assistant attorney general, and, on the brief, *Richard Blumenthal*, attorney general, and *Gary G. Williams*, assistant attorney general, for the appellee (plaintiff).

*Opinion*

O'CONNELL, J. The plaintiff, the commissioner of labor, instituted this action on behalf of six individual claimants[1] seeking the recovery of unpaid wages due from the defendants to the claimants pursuant to General Statutes § 31-72.[2] The trial court found in favor of

[1] The individual claimants are Glenn Maiorano, Vincent Paolicelli, Nancy P. McCann, James Markland and Sara Miller. The plaintiff also brought this action on behalf of Joseph Joyce, but Joyce did not appear to testify at trial, and the court granted the defendants' motion for a judgment of dismissal as to his claim.

[2] General Statutes § 31-72, entitled "Civil action to collect wage claim, fringe benefit claim or arbitration award," provides: "When any employer fails to pay an employee wages in accordance with the provisions of sections 31-71a to 31-71i, inclusive, or fails to compensate an employee in accordance with section 31-76k or where an employee or a labor organization representing an employee institutes an action to enforce an arbitration award which requires an employer to make an employee whole or to make payments to an employee welfare fund, such employee or labor organization may recover, in a civil action, twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court, and any agreement between him and his employer for payment of wages other than as specified in said sections shall be no defense to such action. The Labor Commissioner may collect the full amount of any such unpaid wages, payments due to an employee welfare fund or such arbitration award, as well as interest calculated in accordance with the provisions of section 31-265 from the date the wages or payment should have been received, had payment been made in a timely manner. In addition, the Labor Commissioner may bring any legal action necessary to recover twice the full amount of unpaid wages, payments due to an employee welfare fund or arbitration award, and the employer shall be required to pay the costs and such reasonable attorney's fees as may be allowed by the court. The commissioner shall distribute any wages,

the plaintiff, concluding that the defendants[3] Venture Partners, Ltd., Gary Laskowski and Jonathan Betts were liable for the payment of those unpaid wages. The defendants appeal, claiming that the court improperly (1) determined that the defendants were employers of the wage claimants, (2) determined that Laskowski and Betts were individually liable for the payment of wages and (3) awarded double damages and attorney's fees. We affirm the judgment of the trial court.

The following facts are relevant to this appeal. The defendant Venture Partners, Ltd., (Venture) is a Connecticut corporation engaged in management consulting and investment banking. It assists businesses that have financial or management problems by advising their owners, directors or shareholders on how to solve those problems. The defendant Specialty Publishers, Inc. (Specialty), a company with financial and management problems, sought help from Venture. Specialty and Venture executed a contract (engagement letter) detailing Specialty's retention of Venture's services. Pursuant to that contract, Laskowski, the president and treasurer of Venture, and Betts, the vice president and secretary of Venture, arrived at Specialty in September, 1992, and began work toward the end of October, 1992. The plaintiff commenced this action on behalf of the individual claimants in October, 1993, seeking unpaid wages for the period of August, 1992, through October, 1992. The court awarded double damages and attorney's fees, and the defendants appealed.

arbitration awards or payments due to an employee welfare fund collected pursuant to this section to the appropriate person."

[3] The defendants Specialty Publishers, Inc., Peter Jacquith and Dennis Flavin were defaulted, and the court treated the matter as to them as a hearing in damages. Specialty Publishers, Inc., Flavin and Jacquith have not appealed from the court's judgment. For the purposes of this opinion, we refer to Venture Partners, Ltd., Laskowski and Betts as the defendants.

I

The defendants first claim that the court improperly found that they were employers of the wage claimants.

Before addressing the merits of this claim, we note that the wage claimants sought, and the court awarded, double damages for the period from August, 1992, through October, 1992. The engagement letter relied on by the defendants is dated October 30, 1992. The dissent argues, therefore, that the defendants cannot be liable for wages that accrued prior to their involvement with the company. In this regard, we simply note that the court specifically found that the defendants assumed authority and control over Specialty such that they are liable for the payment of those wages, and that the defendants also induced the wage claimants to continue working by promising them that wages for that work also would be paid. The wage claimants therefore continued to work in November and December of 1992, and were paid during that time. The wage claimants, however, never were paid the amounts owed to them for the period between August, 1992, and October, 1992.

The court determined that "[t]he question before the court . . . is whether [the defendants] were in a position of control of the company to such an extent that they can be held liable for the payment of unpaid wages." The court answered that question in the affirmative, concluding that because "Venture Partners, Ltd., as a corporation, had the ultimate authority and control to pay wages, it is liable for the payment of those wages. Further, since Gary Laskowski and Jonathan Betts, as the two executives of Venture, had the ultimate authority and control within the corporation to pay wages, then they as individuals are also liable for the payment of those wages." The defendants assert that those findings are not supported by the evidence.

We initially note that on appeal it is the function of this court to determine whether the decision of the trial court is clearly erroneous. "The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *United Components, Inc.* v. *Wdowiak*, 239 Conn. 259, 263, 684 A.2d 693 (1996).

Section 31-72 provides that "[w]hen any employer fails to pay an employee wages in accordance with the provisions of sections 31-71a to 31-71i, inclusive, or fails to compensate an employee in accordance with section 31-76k . . . such employee . . . may recover, in a civil action, twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court . . . ." Section 31-72 also authorizes the labor commissioner to bring an action to collect unpaid wages.

"[W]hen placed in its statutory context, the term employer as used in § 31-72 encompasses an individual who possesses the ultimate authority and control within a corporate employer to set the hours of employment and pay wages and therefore is the specific or exclusive cause of improperly failing to do so." *Butler* v. *Hartford Technical Institute, Inc.*, 243 Conn. 454, 462, 704 A.2d 222 (1997). The central question, therefore, is whether the defendants Venture, Laskowski and Betts were in control of the company to such an extent that they can be held liable for the payment of unpaid wages. The court made the following findings to support its conclu-

sion that Venture, Laskowski and Betts possessed such control over Specialty.

"Laskowski and Betts arrived at Specialty Publishers, Inc., in or about early September of 1992, and they began work toward the end of October. Peter Jacquith, who was the sole shareholder of Specialty Publishers, Inc., held a required meeting of the employees in October, at which he introduced Laskowski and Betts as their new managers. The employees were told to report to Laskowski and Betts, and that Laskowski and Betts would handle everything on a day-to-day basis. The employees were told that everything pertaining to the business had to be cleared through said defendants. From the beginning, the employees were told that anything pertaining to the business that the employees conducted for Specialty Publishers . . . would have to be cleared with said defendants because they were managing the company.

"Dennis Flavin as president of Specialty [Publishers, Inc.] had been fired, and Venture, Laskowski and Betts in their new positions managed, directed and ran the daily operations of Specialty Publishers, Inc., with particular emphasis on the financial operations of the company. They had complete dominion over how the moneys at Specialty Publishers, Inc., were to be spent.

"Gary Laskowski and Jonathan Betts in their positions as the officers of Venture Partners, Ltd., controlled and dominated Specialty Publishers, Inc., and in that position of authority at Specialty Publishers, Inc., promised to pay the claimants all wages due them.

"From the beginning of their involvement at the company, Laskowski and Betts assumed authority and control. Their control resulted from their specific, unencumbered dominion and control over how the moneys at Specialty were to be spent. They decided which creditors would be paid and which would not

be paid. All decisions concerning the running of the company were made by them. They directed the day-to-day business of the company and decided what the responsibilities of the employees were to be. Prior to his leaving the company, Dennis Flavin, as president of Specialty, had made 95 percent of the decisions concerning the company. After [Flavin's] removal, Laskowski and Betts made 95 percent of the decisions, even to the extent of not allowing employees to open the mail.

"Said defendants terminated the health insurance of the employees, refused to pay the landlord back rent, fired the accountant who had worked for Specialty, hired other accountants, changed the payroll system, and failed to pay back wages of the five claimants. Although they did not pay wages for August, September, and October, they continued to promise the claimants that those wages would be paid in order to induce them to keep working. They did pay them for work they did in November and December, but fired them in December without paying them for the back wages.

"The defendants claim that all decisions were made by Jacquith even though he almost never showed up at the company. The court does not believe that Jacquith controlled the day-to-day operations of the company or made its financial decisions. In fact, the evidence indicates that Jacquith was used as a rubber stamp of whatever Laskowski and Betts decided should be paid.

"Ultimate dominion, authority and control over Specialty Publishers by Gary Laskowski, Jonathan Betts, and Venture Partners was also exhibited in ownership and signatory authority over the bank accounts in which moneys belonging to Specialty Publishers were deposited. Laskowski and Betts possessed sole signatory authority over at least two checking accounts in which moneys from Specialty were paid from and deposited to the accounts of Venture.

"In summary, the court finds that the three defendants namely, Laskowski, Betts, and Venture Partners were in complete control of Specialty, and that they are liable for refusing to pay wages to the claimants, especially in light of their promise to pay those wages to induce the claimants to continue working during the months of November and December."

In the first issue on appeal, we are asked to decide whether the court properly found that the defendants' conduct went beyond giving advice and consulting services to Specialty such that the defendants became the wage claimants' employers. The defendants rely on the letter of engagement in an attempt to establish that at all times they were merely offering advice and guidance in an effort to resolve Specialty's financial and management problems. The defendants argue that if the court had given more weight to the letter of engagement, it would have found that the defendants were merely consultants and therefore could not have been the wage claimants' employers. The defendants further argue that the court improperly interpreted the engagement letter. We are not persuaded.

The court considered all of the evidence and determined that the claimants' testimony was entitled to greater weight than was the engagement letter relied on by the defendants. The wage claimants testified as to the defendants' day-to-day activities, from which the court properly could find that the defendants were employers and not merely consultants. The defendants argue that the court should not have given weight to the wage claimants' testimony, however, because they only knew what they observed concerning Specialty's operation and lacked knowledge of the internal organization and operation of the company. This was a valid subject for cross-examination, but having heard all of the evidence, it was the sole province of the court to determine the credibility of the witnesses and the

weight to be given to the evidence. "The trial court, as the finder of fact, is in the best position to assess the credibility of the witnesses testifying before it." (Internal quotation marks omitted.) *Thomsen* v. *Aqua Massage International, Inc.*, 51 Conn. App. 201, 206, 721 A.2d 137 (1998), cert. denied, 248 Conn. 902, 732 A.2d 178 (1999). We cannot disturb those findings or the court's ultimate conclusions unless they are clearly erroneous. See *In re Martin K.*, 56 Conn. App. 10, 11, 741 A.2d 10 (1999).

The engagement letter relied on by the defendants was in evidence, and we have no reason to believe that it was not considered by the court. That court simply did not give it the weight that the defendants would like. Moreover, at best, the engagement letter had little relevance to the issue before the court. The letter spelled out the expectations of Specialty and Venture as to the part they expected the defendants to play as consultants. The ultimate issue, however, was not what the contractual terms were between Specialty and Venture, but whether the relationship between the defendants and the wage claimants in fact evolved into one of employer and employee. The engagement letter, therefore, would not foreclose the court from concluding that the defendants had gone beyond the original contracted intent and had moved into the position of "employers."

The court's findings that the defendants were in charge and had taken over Specialty does not leave us with the firm and definite impression that a mistake has been committed. Cf. *Nelson* v. *Nelson*, 13 Conn. App. 355, 359, 536 A.2d 985 (1988). We therefore conclude that the court's finding that the defendants were employers was not clearly erroneous.[4]

[4] In so holding, we emphasize that we are not adopting a bright line rule with respect to the liability of consultants under § 31-72. Under the facts of this case, however, in which the court specifically found that the defendants had taken over Specialty to such an extent that they possessed the

## II

The defendants Laskowski and Betts also claim that the court improperly found them individually liable for the unpaid wages. They argue that the evidence does not support piercing Venture's corporate veil so as to impose individual liability. The fallacy in this argument is that the court did not claim to be piercing the corporate veil, but rather was imposing liability pursuant to *Butler* v. *Hartford Technical Institute, Inc.*, supra, 243 Conn. 454. In *Butler*, our Supreme Court concluded "that an individual personally can be liable as an employer pursuant to § 31-72, notwithstanding the fact that a corporation is also an employer of the claimant, if the individual is the ultimate responsible authority to set the hours of employment and to pay wages and is the specific cause of the wage violation." Id., 463–64.

In the present case, the court made the necessary factual findings to support its conclusion that Laskowski and Betts had the ultimate responsibility to pay the claimants' wages and that they had failed to pay them. See part I of this opinion. The court properly found that the defendants Laskowski and Betts, together with Venture, the corporate employer, were personally liable.[5]

## III

The defendants' final claim is that the court improperly awarded double damages and attorney's fees. In this regard, the defendants first argue that the plaintiff failed to prove that the actions of the defendants were

ultimate authority and control over the payment of wages, we cannot say that the court's decision was clearly erroneous.

[5] In so holding, we note the defendants' argument, raised in their reply brief, that the court improperly applied *Butler* retroactively. "It is a well established principle that arguments cannot be raised for the first time in a reply brief." (Internal quotation marks omitted.) *Williams Ford, Inc.* v. *Hartford Courant Co.*, 232 Conn. 559, 593 n.26, 657 A.2d 212 (1995). We therefore decline to consider this aspect of the claim.

arbitrary, unreasonable or done in bad faith. We disagree.

Section 31-72 provides for double damages and attorney's fees in unpaid wage cases.[6] Our case law holds that "awards for double damages and attorney's fees are inappropriate in the absence of the trial court's finding of bad faith, arbitrariness or unreasonableness." (Internal quotation marks omitted.) *Sansone* v. *Clifford*, 219 Conn. 217, 229, 592 A.2d 931 (1991). In the present case, the court found as follows: "[D]ouble damages should be awarded in this case. [The court] finds bad faith, arbitrariness and unreasonableness on the part of the defendants Venture, Laskowski and Betts. The claimants were promised by said defendants that they would be paid their back wages as an inducement to keep them working. Yet, they were fired two months later and not given those back wages. After being fired, they were further told they would be paid if they would sign certain releases. However, to this day they have not been paid."

There was ample evidence to support the court's finding, and it is in keeping with the remedial purpose of the wage laws. See *Butler* v. *Hartford Technical Institute, Inc.*, supra, 243 Conn. 463. In upholding the award of double damages, we also note that the United States Supreme Court has enunciated its strong position on double damages in wage cases. "It constitutes a Congressional recognition that failure to pay the statutory minimum on time may be so detrimental to maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers and to the free flow of commerce, that double payment must be paid in the event of delay in order to insure restoration of the worker to that minimum standard of well-being." *Brooklyn Savings Bank* v. *O'Neil*, 324 U.S.

---

[6] See footnote 2.

697, 707, 65 S. Ct. 895, 89 L. Ed. 1296 (1945). We therefore conclude that the court did not abuse its discretion in awarding double damages pursuant to § 31-72. See *Anderson* v. *Schieffer*, 35 Conn. App. 31, 43, 645 A.2d 549 (1994).

The defendants finally contend that the court's award of $5000 as attorney's fees was improper because the court failed to hold a hearing on the subject. We do not agree. The court stated that "the plaintiff is seeking an attorney's fee in the amount of $5000. The court finds this to be reasonable inasmuch as there were five days of trial."

In *Bizzoco* v. *Chinitz*, 193 Conn. 304, 310, 476 A.2d 572 (1984), our Supreme Court stated that "courts may rely on their general knowledge of what has occurred at the proceedings before them to supply evidence in support of an award of attorney's fees." The court in *Bizzoco* upheld an award of attorney's fees, noting the trial court's knowledge that the plaintiff's counsel had taken a lengthy deposition, had engaged in the trial, and had prepared a posttrial brief and was therefore in a position to evaluate the complexity of the issues presented and the skill with which counsel had dealt with those issues. Id., 310–11. In the present case, as in *Bizzoco*, the court was familiar with counsel's preparation and presentation of the case. The evidence supports the award of attorney's fees made by the court.

The judgment is affirmed.

In this opinion LANDAU, J., concurred.

ZARELLA, J., dissenting. I respectfully disagree with the majority and, accordingly, I dissent. The central issue in this case is whether the defendants are employers for the purposes of General Statutes § 31-72 and therefore are liable for wages due employees that were

earned prior to the defendants' involvement with the defendant Specialty Publishers, Inc. (Specialty).

The seminal case involving actions commenced pursuant to § 31-72 is *Butler* v. *Hartford Technical Institute, Inc.*, 243 Conn. 454, 704 A.2d 222 (1997). In *Butler*, our Supreme Court established the test to determine who is an employer for purposes of the statute. "[T]he term employer as used in § 31-72 encompasses an individual who possesses the ultimate authority and control within a corporate employer to set the hours of employment and pay wages and therefore is the specific or exclusive cause of improperly failing to do so." Id., 462. In this case, the trial court found that the defendants had the authority to pay wages and to control the hours of employment. That, however, is only one part of the test.

The plaintiff also has the burden of demonstrating that the persons to be held liable have the ultimate authority and are the "specific or exclusive cause" of improperly failing to pay wages. Id. The undisputed facts in this case are that the wage claims were for the period from August through October, 1992. Thus, the wages were earned prior to the defendants' execution of a contract with Specialty on October 30, 1992, and prior to beginning their engagement to assist Specialty with its financial and management problems. The employees received their wages for the entire period that the defendants were active in the management of Specialty.

Upon the execution of the contract, the defendants immediately commenced work for Specialty. The defendants discovered the company in such a state of disarray that they were unable to determine the financial status of the business. The defendants immediately hired an outside accountant to help reconstruct the financial records. It was at this point that the defendants learned

that back wages were owed to the employees. As of the date that the defendants commenced operating Specialty, the company was insolvent and it never regained solvency.[1] The defendants, who had operational control of an insolvent company for a little more than two months, reasonably cannot be said to be the specific or exclusive cause of failing to pay wages that accrued in the months prior to their involvement with the company.

The majority correctly points out that the trial court is the ultimate assessor of the credibility of witnesses. The majority further points out that the trial court accepted the version of the facts proffered by the plaintiffs rather than that of the defendants, and that those facts were sufficient to support the conclusion that the defendants were employers for the purpose of the statute. I disagree not with the facts, but with the conclusion that they are sufficient to support the finding that the defendants were employers.

The wage claimants' testimony was limited to their observations during November and December, 1992. Those observations were limited by the very nature of the jobs they held with Specialty. Accepting as true the facts found by the trial court, they are insufficient, in my view, to establish the actual authority of the defendants. The wage claimants testified that they had no knowledge of Specialty's board of directors' meetings, the contract between Specialty and the defendants or the letters from the defendants seeking authorization from Specialty's chief executive officer to make payments. All of this evidence was documentary in nature and was not rebutted or questioned by the plaintiff. Even if the trial court chose to disbelieve the defendants' testimony, the plaintiff failed to establish the defendants' actual authority.

---

[1] The evidence established that the company lost $4 million in the eighteen months prior to October 30, 1992.

It is not the wage claimants' subjective understanding that is the determining factor as to whether an employer-employee relationship exists. If that were the determinative factor, then the wage claims of various employees would be treated differently on the basis of their individual understandings. Rather, as previously noted, it is a question of whether the defendants had actual authority to determine the hours of employment and to pay wages to the point where they are determined to be the specific or exclusive cause of the wage claimants not being paid. The trial court has, in effect, transferred the burden of proof to the defendants in this case.

For the foregoing reasons, I respectfully disagree with the conclusion of the majority that the defendants were the employers of the wage claimants for purposes of § 31-72. I would reverse the judgment of the trial court.