[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case, which was tried to the court, involves General Statutes § 31-72, permitting a civil action to collect unpaid wages. The plaintiff, Emilio Alvarado, was described by his attorney as a "Costa Rican without documentation:" The plaintiff brought this action against Philip Law, the defendant, who was the president and fifty percent shareholder of CRSA, Inc. (CRSA), located on Danbury Road in Wilton. The plaintiff worked as a cabinet maker for CRSA from July 27, 1995 to November 18, 1995.
The issues are whether the plaintiff is owed any money for unpaid wages, and if so, whether the defendant, Philip Law, is personally responsible to the plaintiff. The answer to both of these questions is yes, for the following reasons.
The evidence demonstrated that the plaintiff was hired by the defendant through another employee who spoke Spanish. The defendant set the wages for the plaintiff at $8 an hour for the first 48 hours of work per week, and $10 an hour after 48 hours of work.[1] The plaintiff worked 66 hours a week and was always paid in cash. The defendant did not provide him with pay stubs or other records. For several months, the plaintiff was underpaid and for about five weeks before he left employment, the plaintiff was not paid anything at all, except for $500 in cash from the defendant some time in early November, 1995. CT Page 9595
As a result of this underpayment and nonpayment, the plaintiff filed a complaint with the Connecticut Department of Labor, and a wage' enforcement agent, Blair Bertaccini, obtained a warrant and the defendant was arrested for violating General Statutes § 31-72. The charges were later nolled and the defendant paid $1,000 to the Department of Labor which was turned over to the plaintiff on December 20, 1999, in accordance with General Statutes § 31-72. Thus, the defendant is to be credited with $500, plus the $1,000, or a total of $1,500, against any amount that this court determines that he owes the plaintiff for back wages.
According to the records of the Department of Labor, for the period from August 5, 1995 to October 14, 1995, the plaintiff was paid $564 a week, instead of $632, a difference of $68 a week for ten weeks. For five weeks, October 14, 1995 to November 11, 1995, when the plaintiff terminated his employment, he did not receive any wages. This amounts to $3,160. For the last week of his employment, the plaintiff worked 62 hours and is owed $584. This totals $4,424, and subtracting the above two credits, the plaintiff is owed $2,924.
The next issue is whether this defendant is personally liable to the plaintiff. The defendant claims that he ceased working for CRSA in May or June of 1995, before the plaintiff began his employment with the company. The defendant also contends that he did not hire the plaintiff or supervise him, did not set the hours that the plaintiff worked, or determine his rate of pay. The better and weightier evidence, however, is to the contrary. There was no testimony that the defendant ever sold his shares in CRSA. He continued to lease the premises in Wilton, which consisted of a 12,000 square foot warehouse, where the manufacturing took place during the plaintiff's employment. The defendant rented rooms in an apartment house where the plaintiff and several other CRSA workers lived, and it was the defendant who instructed the plaintiff to vacate his room in November, 1995, when the plaintiff terminated his employment with CRSA. It was also the defendant who paid the plaintiff $500 in cash near the end of his employment. Finally, at all relevant times, the defendant owned all the machinery used to manufacture the cabinets.
The defendant is personally liable for these unpaid wages on the authority of Butler v. Hartford Technical Institute, 243 Conn. 454,704 A.2d 222 (1997). This case holds that an individual "who possesses the ultimate authority and control within a corporate employer to set the hours of employment and pay wages and therefore is the specific or exclusive cause of improperly failing to do so" may be personally liable for nonpayment. Id., 462. The defendant fits this description because he was the president of CRSA and ran its day by day operations, including hiring and setting wages. Thus, the plaintiff has met his burden of CT Page 9596 proving that the individual defendant is liable to him because of the nature of his job responsibilities.
The plaintiff is also entitled to double damages as authorized by General Statutes § 31-72, because the defendant acted in bad faith, arbitrarily and unreasonably in that he demanded that the plaintiff work 66 hours per week without paying him the proper amount of overtime and without giving him any payment records. Moreover, at some point near the end of his employment when the plaintiff was not being paid, the defendant promised the plaintiff and several of his fellow workers that they would be paid "next week," thereby inducing the plaintiff to work one more week without pay. The plaintiff is owed $2,924 which, when doubled, amounts to $5,848. The doubling of damages in the context of unpaid wages was approved as in keeping with "the remedial purpose of the wage laws." Petronella v. Venture Partners, Ltd., 60 Conn. App. 205,215, 758 A.2d 869, cert. granted, 255 Conn. 909, 763 A.2d 1936 (2000).
This same statute also authorizes the payment of a reasonable attorney's fee to reimburse the plaintiff, who retained counsel on a one-third contingency fee. One-third of $5,848 amounts to $1,950. This is a reasonable fee based on the number of trial days, the complexity of the matter, and the skill of counsel.
Moreover, the plaintiff is entitled to interest pursuant to General Statutes § 37-3a for the wrongful detention of money after it becomes due. This money represents unpaid wages, a specific, liquidated sum, that was due to plaintiff for labor he performed. The detention of money under those circumstances is wrongful. Interest runs at 10% per year on $2,924, the unpaid wages prior to doubling, from November 18, 1995, when the plaintiff left his employment, to the date of this judgment. This amounts to $2,210.06.
To summarize, the amount owed the plaintiff is as follows: $2,924 unpaid wages, doubled to $5,848, plus interest of $2,210.06, and an attorney's fee of $1,950, for a total of $10,008.06. Consequently, judgment may enter in favor of the plaintiff and against the defendant in that amount. Costs may be taxed in favor of the plaintiff by the chief clerk of this court in accordance with General Statutes § 52-257 and Practice Book § 18-5.
So Ordered.
Dated at Stamford, Connecticut, this 10th day of July, 2001.
William B. Lewis Judge Trial Referee CT Page 9597