### UNITED COMPONENTS, INC., ET AL. *v.* RICHARD WDOWIAK
### (15465)

Callahan, C. J., and Berdon, Norcott, Katz and Palmer, Js.

Argued September 25—officially released November 19, 1996

*William M. Laviano*, for the appellants (plaintiffs).

*Edwin L. Doernberger*, for the appellee (defendant).

PER CURIAM. This appeal arises out of an action by the plaintiffs, United Components, Inc. (United), and Richard Ruhling (Ruhling), in which United alleged the usurpation of a corporate opportunity by the defendant, Richard Wdowiak (Wdowiak), and Ruhling alleged a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., by Wdowiak.

The plaintiffs initiated this action on August 9, 1988. It was subsequently tried to the court for a total of eight days, after which, in a memorandum of decision, the trial court found for the defendant on all counts of the plaintiffs' revised complaint. The plaintiffs appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm the judgment of the trial court.

We have exhaustively reviewed the transcripts and exhibits and conclude that the trial court reasonably found the following relevant facts. Wdowiak and Ruhling were major stockholders, officers, and employees of United, a manufacturers representative.[1] Prior to March, 1988, United had represented Aromat, a manufacturer that supplied electrical components to the

---

[1] United represented manufacturers by selling the manufacturers' products to purchasers in the marketplace. United received commissions on these sales.

American Telephone and Telegraph Company (AT&T). The Aromat-AT&T account was serviced by Wdowiak and was a significant part of United's business. On March 9, 1988, Aromat terminated United's representation of Aromat. Soon after Aromat terminated its relationship with United, Ruhling and Wdowiak contacted Aromat in an attempt to retrieve its business. Joseph Nemec, an assistant general manager of sales at Aromat informed Ruhling and Wdowiak that Aromat's decision to terminate its relationship with United was irreversible.

While the precise chronology is not entirely clear from the record, the following occurrences took place in April, 1988: (1) Ruhling and Wdowiak discussed the possibility of continuing to service AT&T by finding a replacement product line for Aromat; (2) Wdowiak learned that United had lost several additional product lines; (3) Wdowiak informed Ruhling that it made no sense for him to stay with United since it was losing product lines; and (4) Ruhling asked Wdowiak if he would stay with United if a replacement product line for Aromat could be secured.

On May 3, 1988, Wdowiak sent his resume to Aromat. Also in May, Wdowiak provided certain sales figures to Aromat at its request. On May 9 or 10, a meeting was held at which United made a presentation to Omron, a competitor of Aromat, in an attempt by United to sign Omron as a client in order to have Omron's product line replace that of Aromat at AT&T. Executives of AT&T were also present at the meeting. Ultimately, United was not given the Omron account.

On May 31, 1988, Wdowiak submitted his resignation to United. On that same day, he signed a representation agreement with Aromat. In this regard, the trial court found that, "[a]lthough Wdowiak was seeking to be an Aromat rep or to be an employee in early May, he did

not know nor did he expect to be a rep until his visit on May 31, 1988 when he was given a contract to sign."

On the basis of these and other facts, the trial court found against the plaintiffs on all counts of their complaint, stating that it could not conclude "that Wdowiak intercepted and diverted accounts surreptitiously in breach of his fiduciary duty as an officer of [United]." The trial court also found that "[t]here is no evidence to conclude that Wdowiak substantially contributed to the loss of the value of [United] or that he did not perform his duties to [United] after the loss of the Aromat line."

The plaintiffs presented the following five issues on appeal: whether the trial court (1) improperly found that Wdowiak gave timely notice that he was terminating his relationship as an officer and director of United; (2) improperly determined that United was not financially viable as constituted in 1988 without the Aromat account and various other accounts it had lost; (3) properly excluded from evidence a transcript from a separate arbitration proceeding that the plaintiffs contend was crucial, relevant and admissible evidence in the case; (4) misconstrued United's first count as solely a "corporate opportunity" claim; and (5) improperly determined that there was no viable CUTPA claim. Because we do not find the plaintiffs' arguments in support of their positions on these issues convincing, we affirm the judgment of the trial court.

The first two issues presented by the plaintiffs' appeal concern the trial court's role as fact finder. With respect to those two issues, the plaintiffs claim that the trial court's findings of fact were clearly erroneous. A thorough review of the record does not support that conclusion and did not leave us with a definite and firm conviction that a mistake had been made. It is particularly in cases such as this, in which there is conflicting

testimony, that a great degree of deference to the trial court's factual findings is appropriate. "The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) *Crowell* v. *Danforth*, 222 Conn. 150, 156, 609 A.2d 654 (1992); see also *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 220, 435 A.2d 24 (1980). We conclude, therefore, that the trial court's factual findings are not clearly erroneous.[2]

The plaintiffs also claim that the trial court's evidentiary ruling excluding testimony given during a separate arbitration proceeding between United and Aromat[3] was an abuse of the court's discretion. At trial, the plaintiffs offered the transcript for the truth of its content. The trial court, however, refused to admit the transcript, ruling that it was hearsay. Our review of the record indicates that the transcript, for the purposes offered, was clearly hearsay. Because the plaintiffs failed to establish that an exception to the hearsay rule applied, the trial court acted well within its discretion in excluding it. See *Ellice* v. *INA Life Ins. Co. of New York*, 208 Conn. 218, 222, 544 A.2d 623 (1988); *State* v.

---

[2] It should be noted, moreover, that neither of these factual findings is essential to the trial court's conclusions. Wdowiak did not have an affirmative duty to reveal his resignation date before he actually resigned, and United's financial and client doldrums were not the primary reasons why the trial court concluded that the Aromat-AT&T account was not a viable corporate opportunity of United.

[3] Wdowiak was not a party to the arbitration proceeding.

*Fritz*, 204 Conn. 156, 167, 527 A.2d 1157 (1987); *State v. Boucino*, 199 Conn. 207, 225, 506 A.2d 125 (1986).

The plaintiffs next contend that the trial court improperly interpreted United's first count as solely a usurpation of a corporate opportunity claim. United claims that the court misconstrued the first count and did not address its claim of breach of a fiduciary duty by Wdowiak that was independent of its usurpation of a corporate opportunity claim. Characterizing the situation differently or claiming that a certain cause of action exists does not, however, change the basic nature of the underlying factual situation or the cause of action. The pleadings are most accurately described as claiming the usurpation of a corporate opportunity. "[T]he interpretation of pleadings is always a question of law for the court . . . . We have pointed out that [t]he burden [is] upon the pleaders to make such averments that the material facts should appear with reasonable certainty; and for that purpose [the pleaders] were allowed to use their own language. Whenever that language fails to define *clearly* the issues in dispute, the court will put upon it such reasonable construction as will give effect to the pleadings in conformity with the general theory which it was intended to follow, and do substantial justice *between the parties*." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Cahill* v. *Board of Education*, 198 Conn. 229, 236, 502 A.2d 410 (1985); *Preleski* v. *Farganiasz*, 97 Conn. 345, 348, 116 A. 593 (1922). We conclude that the trial court did not misconstrue United's first count in the plaintiffs' revised complaint.

Finally, Ruhling argues that the trial court improperly determined that CUTPA was inapplicable to his claim because his claim involved an employer-employee relationship and did not rise to the level of trade or commerce cognizable under CUTPA. See *Quimby* v. *Kimberly Clark Corp.*, 28 Conn. App. 660, 670, 613 A.2d

838 (1992). After scrutinizing the record and the plaintiffs' arguments and briefs, we find ample support for the trial court's determination. We therefore conclude that the trial court properly found that there was no viable CUTPA claim.

The judgment is affirmed.