## TYLER'S COVE ASSOCIATION, INC. *v.* TOWN OF MIDDLEBURY ET AL.
### (16196)

Landau, Schaller and Spear, Js.

Argued December 2, 1996—officially released March 18, 1997

*Robert W. Smith,* for the appellant-appellee (defendants).

*James E. Hartley, Jr.,* with whom, on the brief, was *Kathleen A. St. Onge,* for the appellees-appellants (plaintiff).

LANDAU, J. The defendants appeal and the plaintiff cross appeals from the judgment of the trial court rendered in favor of the plaintiff on its complaint seeking a reduction in the amount of the assessment and tax on a parcel of real property. On appeal, the defendants claim that the trial court improperly (1) ordered a reduction in the assessed fair market value of the condominium units, (2) admitted into evidence the plaintiff's expert witness' appraisal, and (3) found the subject parcel overvalued. On cross appeal, the plaintiff claims that the trial court improperly (1) found that the tax on the subject parcel was not manifestly excessive, (2) failed to find that the assessor failed to apportion the value of the land among the respective condominium units, and (3) found that the board and the assessor did not predetermine the assessed land value. We affirm the judgment of the trial court in part and reverse the judgment in part.

The trial court found the following facts. The plaintiff, Tyler's Cove Association, Inc., consists of thirty-eight owners of individual cottages situated on approximately 16.5 acres of land located in the town of Middlebury.[1] Prior to 1987, the individual unit owners did not own the land on which each unit was situated, but leased it on a year to year basis from the owner. In 1987, the unit owners formed a corporation, Tyler's Cove, Inc., and purchased the 16.5 acre parcel of land for $1.926 million. In 1989, Tyler's Cove, Inc., conveyed the 16.5 acres to Tyler's Cove Association, Inc., the plaintiff in this matter. Each unit owner now owns one thirty-eighth of the common elements, which includes the land. Following the recording of the condominium declaration in 1989, the town, through the board of tax

---

[1] As a threshold matter, we note that the plaintiff, Tyler's Cove Association, Inc., has standing to bring an appeal on behalf of its unit owners. See *Candlewood Landing Condominium Assn., Inc.* v. *New Milford*, 44 Conn. App. 107, 111–12, 686 A.2d 1007 (1997); see also General Statutes § 47-244 (a) (4).

review, assessed each unit with a land assessment of approximately $18,000.

Sometime prior to October 1, 1992, the defendant Edmund Corapinski, the tax assessor of the town of Middlebury, undertook the process of revaluation of all real property in the town. The defendant town of Middlebury hired a revaluation company, Lesher-Glendinning Municipal Services, Inc., whose president is John J. Valente, to assist with the revaluation. Corapinski and Valente used the comparable sales method approach to establish the fair market value of all real estate in Middlebury, including the thirty-eight condominium units at Tyler's Cove. In valuing the land, they used the residual value approach method, which involved subtracting the cost of the building from the fair market value; the residual value was the "condominium interest value," which included the land value. During the Tyler's Cove revaluation, Corapinski and Valente used field cards to gather information and to determine the fair market value. The field cards included a section for the building value and also a section for the land value, which Corapinski claimed was used solely for informational purposes. The resulting tax assessment figures were placed on the grand list as the final step in the revaluation process.

The total fair market value on the October 1, 1992 grand list, of the thirty-eight Tyler's Cove units and the 16.5 acres on which they are located, was $4,545,600. The plaintiff appealed the October 1, 1992 grand list to the board of tax review and the board reduced the value of each unit at Tyler's Cove by $5000. For the subsequent grand lists of October 1, 1993 and 1994, the town assessed taxes on Tyler's Cove units in accordance with the board's modified value. The plaintiff appealed from both grand lists, but the board refused to make any further reductions. The October 1, 1993 and October 1, 1994 grand lists are the subject of this appeal.

The plaintiff filed an appeal in the trial court pursuant to General Statutes §§ 12-117a[2] and 12-119[3] from the

[2] General Statutes § 12-117a provides: "Notwithstanding the provisions of sections 12-118, 12-121aa and 12-121bb, any person, including any lessee of real property whose lease has been recorded as provided in section 47-19 and who is bound under the terms of his lease to pay real property taxes, claiming to be aggrieved by the action of the board of tax review in any town or city with respect to the assessment list for the assessment year commencing October 1, 1989, October 1, 1990, October 1, 1991, October 1, 1992, October 1, 1993, or October 1, 1994, may, within two months from the time of such action, make application, in the nature of an appeal therefrom, to the superior court for the judicial district in which such town or city is situated, which shall be accompanied by a citation to such town or city to appear before said court. Such citation shall be signed by the same authority and such appeal shall be returnable at the same time and served and returned in the same manner as is required in case of a summons in a civil action. The authority issuing the citation shall take from the applicant a bond or recognizance to such town or city, with surety, to prosecute the application to effect and to comply with and conform to the orders and decrees of the court in the premises. Any such application shall be a preferred case, to be heard, unless good cause appears to the contrary, at the first session, by the court or by a committee appointed by the court, and the pendency of such application shall not suspend an action by such town or city to collect not more than seventy-five per cent of the tax so assessed or not more than ninety per cent of such tax with respect to any real property for which the assessed value is five hundred thousand dollars or more, and upon which such appeal is taken. If, during the pendency of such appeal, a new assessment year begins, the applicant may amend his application as to any matter therein, including an appeal for such new year, which is affected by the inception of such new year and such applicant need not appear before the board of tax review to make such amendment effective. The court shall have power to grant such relief as to justice and equity appertains, upon such terms and in such manner and form as appear equitable, and, if the application appears to have been made without probable cause, may tax double or triple costs, as the case appears to demand; and, upon all such applications, costs may be taxed at the discretion of the court. If the assessment made by the board of tax review is reduced by said court, the applicant shall be reimbursed by the town or city for any overpayment of taxes, together with interest and costs, or, at the applicant's option, shall be granted a tax credit for such overpayment, interest and costs. Upon motion, said court shall, in event of such overpayment, enter judgment in favor of such applicant and against such city or town for the whole amount of such overpayment, together with interest and costs. The amount to which the assessment is so reduced shall be the assessed value of such property on the grand lists for succeeding years until the tax assessor finds that the value of the applicant's property has increased or decreased."

[3] See footnote 8.

decision of the board refusing to reduce the assessment of its property in 1993. The plaintiff amended its complaint to include the October 1, 1994 grand list. In its complaint, the plaintiff alleged in counts two and four, for 1993 and 1994 respectively, brought pursuant to § 12-117a, that it was aggrieved by the decision of the board and in counts one and three, for 1993 and 1994 respectively, brought pursuant to § 12-119, that the assessment was manifestly excessive. In the demand for relief, the plaintiff sought a reduction of the assessed values.

The trial court found for the plaintiff on counts two and four, the § 12-117a counts, and for the defendants on counts one and three, the § 12-119 counts. This appeal and cross appeal followed.

I

The defendants first claim that the trial court improperly ordered a reduction in the fair market value of the Tyler's Cove units. We agree.

In an appeal from a board of tax review pursuant to § 12-117a, "[t]he function of the trial court is to determine the true and actual value of the plaintiff's property. *Dickau* v. *Glastonbury*, 156 Conn. 437, 441, 444, 242 A.2d 777 [1968]; *Burritt Mutual Savings Bank* v. *New Britain*, 146 Conn. 669, 673, 154 A.2d 608 [1959]. . . . *Executive Square Ltd. Partnership* v. *Board of Tax Review*, 11 Conn. App. 566, 570, 528 A.2d 409 (1987)." (Internal quotation marks omitted.) *Heather Lyn Ltd. Partnership* v. *Griswold*, 38 Conn. App. 158, 164, 659 A.2d 740 (1995). The law contemplates, however, "that a wide discretion is to be accorded to assessors, and unless their action is discriminatory or so unreasonable that property is substantially overvalued and thus injustice and illegality result, their opinion and judgment should control in the determination of value for taxation

purposes." *Stamford Apartments Co.* v. *Stamford*, 203 Conn. 586, 589, 525 A.2d 1327 (1987).

In a tax appeal, the trial court hears the case de novo and makes an independent valuation of the subject property. Id., 588. " 'The conclusions reached by the trial court must stand unless they are legally or logically inconsistent with the facts found or unless they involve the application of some erroneous rule of law.' " *Reynaud* v. *Winchester*, 35 Conn. App. 269, 274, 644 A.2d 976 (1994), quoting *Newbury Commons Ltd. Partnership* v. *Stamford*, 226 Conn. 92, 100, 626 A.2d 1292 (1993).

"In an appeal . . . from a board of tax review, the court performs a double function. The court must first determine whether the plaintiff has met his burden of establishing that he is, in fact, aggrieved by the action of the board. Only when the court finds that the action of the board will result in the payment of an unjust and, therefore, illegal tax, can the court proceed to exercise its broad discretionary power to grant such relief as is appropriate." *Gorin's, Inc.* v. *Board of Tax Review*, 178 Conn. 606, 608, 424 A.2d 282 (1979); *Grossomanides* v. *Wethersfield*, 33 Conn. App. 511, 515, 636 A.2d 867 (1994).

Some additional facts are necessary for the resolution of this issue on appeal. As a result of the revaluation conducted during 1991-1992, the total value of the assessment for all thirty-eight condominiums and amenities relative thereto as valued by the town on October 1, 1993, was $4,545,600.[4] Corapinski and Valente used regular residential field cards, which allow for 200

---

[4] Following the revaluation and grand list of October 1, 1992, the plaintiff association appealed to the board of tax review pursuant to General Statutes § 12-111. The board found that the plaintiff had been aggrieved by the assessment to some extent and reduced the value of each unit at Tyler's Cove by $5,000 or, in other words, reduced the total value of the units and amenities thereto by $190,000.

entries or items, as opposed to standard condominium field cards, which provide for only thirty entries or items, because the Tyler Cove units were more like individual houses or cottages than condominiums. On the field cards there are, inter alia, values entered for fair market value of the unit and the amenities, assessed value (70 percent of fair market value), building value and land value. The plaintiff's main disagreement with the revaluation is that a substantial portion of each condominium's value is listed under the entry of "land value." Of the thirty-eight units, the thirty lakefront units had a "land" value of $85,000 for each such unit, and the eight units that did not border the lake had a "land" value of $65,000.[5] The plaintiff contends that the town has valued the land on which the condominiums are located at a fair market value of $3,070,000.

The plaintiff's expert witness, Robert Nocera, conducted an appraisal of only the land on which the condominiums are situated. He testified that he could not find land in Middlebury that was approved for condominiums so he used comparable land approved for condominiums in other towns in the state. He further testified that he used land sales other than condominiums in Middlebury. Nocera concluded that the fair market value of the land was $660,000.

The plaintiff argues that the defendants failed to assess their real property as prescribed by General Statutes § 47-79 (a) of the Condominium Act of 1976.[6] Section 47-79 (a) provides in part that "[n]either the building, the property nor any of the common areas and the facilities shall be deemed to be a parcel, but each unit shall be deemed to have an undivided interest therein and assessments against any such unit shall include such proportionate undivided interest. . . ."

[5] Prior to the board's $5000 reduction in 1992, these values had been $90,000 and $70,000 respectively. See footnote 4.

[6] General Statutes § 47-68a et seq.

Corapinski and Valente testified that the "land value" entry on the field card represented the "amenity" or "condominium interest value," which included the value of the land. They both contend, however, that the "land value" figure, calculated by using the residual value method, was solely for informational purposes. Valente further testified that he was never told to put a value on any of the land.

In its memorandum of decision, the trial court reviewed the testimony of Corapinski, Valente, and Nocera. The trial court noted that, as a result of the town's revaluation, the assessment of the plaintiff's units increased "tremendously." The trial court also noted, however, that, a review of eight recent sales, five between 1989 and 1992 and three after 1992, confirmed that the fair market value estimated by the town on each property was less than the sales price. The trial court found that the plaintiff had sustained its burden of proof as to counts two and four of the amended complaint, which sought reduced assessments pursuant to § 12-117a. Accordingly, the trial court ordered that the fair market value of each condominium unit be reduced by $10,000 on the October 1, 1993 and October 1, 1994 grand lists.

Although the trial court concluded that the plaintiff had met its burden of proof in establishing that it was aggrieved by the action of the board, the trial court stated no basis for that conclusion. Corapinski and Valente testified that they calculated the fair market value of the units and amenities by using the comparable sales method and that they did not separately calculate the value of the land. Nocera's appraisal was the only evidence before the trial court of the value of the land. Without making any findings with regard to the value of the land, the trial court ordered that the fair market value of each unit be reduced by $10,000. This conclusion is logically inconsistent with the facts found. The trial court did not find that the assessor had overval-

ued the property. The trial court did find, however, after reviewing eight contemporaneous sales, that the fair market value estimated by the town on each property was less than the sales price. The plaintiff failed to overcome this persuasive evidence. As a result, the trial court improperly exercised its broad discretionary power in granting the reduction in the units' fair market value. See *Gorin's Inc.* v. *Board of Tax Review*, supra, 178 Conn. 608. Therefore, the judgment must be reversed.[7]

## II

In its cross appeal, the plaintiff claims that the trial court improperly found that the tax on the subject parcel was not manifestly excessive under General Statutes § 12-119.[8] We disagree.[9]

---

[7] As a result of the foregoing, we do not reach the defendants' second claim that the trial court improperly admitted into evidence the appraisal of the plaintiff's expert witness and their third claim that the trial court improperly found the subject parcel overvalued.

[8] General Statutes § 12-119 provides: "When it is claimed that a tax has been laid on property not taxable in the town or city in whose tax list such property was set, or that a tax laid on property was computed on an assessment which, under all the circumstances, was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property, the owner thereof or any lessee thereof whose lease has been recorded as provided in section 47-19 and who is bound under the terms of his lease to pay real property taxes, prior to the payment of such tax, may, in addition to the other remedies provided by law, make application for relief to the superior court for the judicial district in which such town or city is situated. Such application may be made within one year from the date as of which the property was last evaluated for purposes of taxation and shall be served and returned in the same manner as is required in the case of a summons in a civil action, and the pendency of such application shall not suspend action upon the tax against the applicant. In all such actions, the Superior Court shall have power to grant such relief upon such terms and in such manner and form as to justice and equity appertains, and costs may be taxed at the discretion of the court. If such assessment is reduced by said court, the applicant shall be reimbursed by the town or city for any overpayment of taxes in accordance with the judgment of said court."

[9] The plaintiff alleged in counts one and three of its complaint, for the October 1, 1993 and October 1, 1994 grand lists respectively, violations of General Statutes § 12-119.

"The principles that govern a complaint filed pursuant to § 12-119 are not in dispute. In contrast to § 12-117a [see footnote 2], which allows a taxpayer to challenge the assessor's valuation of his property, § 12-119 allows a taxpayer to bring a claim that the tax was imposed by a town that had no authority to tax the subject property, or that the assessment was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of [the real] property . . . . Our case law makes clear that a claim that an assessment is 'excessive' is not enough to support an action under this statute. Instead, § 12-119 requires an allegation that something more than mere valuation is at issue. *Second Stone Ridge Cooperative Corp.* v. *Bridgeport*, 220 Conn. 335, 339–40, 597 A.2d 326 (1991); accord *Connecticut Light & Power Co.* v. *Oxford*, 101 Conn. 383, 392, 126 A. 1 (1924)." (Internal quotation marks omitted.) *Pauker* v. *Roig*, 232 Conn. 335, 339, 654 A.2d 1233 (1995).

The first category in § 12-119 "embraces situations where a tax has been laid on a property not taxable in the municipality where it is situated." *E. Ingraham Co.* v. *Bristol*, 146 Conn. 403, 408, 151 A.2d 700, cert. denied, 361 U.S. 929, 80 S. Ct. 367, 4 L. Ed. 2d 352 (1959). This category is not applicable to the facts of this case and, thus, will not be addressed.

"The second category consists of claims that assessments are (a) manifestly excessive and (b) . . . could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of the property. . . . *E. Ingraham Co.* v. *Bristol*, [supra, 146 Conn. 409]. Cases in this category must contain allegations beyond the mere claim that the assessor overvalued the property. [The] plaintiff . . . must satisfy the trier that [a] far more exacting test has been met: either there was misfeasance or nonfeasance by the taxing authorities, or the assessment was arbi-

trary or so excessive or discriminatory as in itself to show a disregard of duty on their part. *Mead* v. *Greenwich*, 131 Conn. 273, 275, 38 A.2d 795 (1944). Only if the plaintiff is able to meet this exacting test by establishing that the action of the assessors would result in illegality can the plaintiff prevail in an action under § 12-119. The focus of § 12-119 is whether the assessment is illegal. *Cohn* v. *Hartford*, 130 Conn. 699, 703, 37 A.2d 237 (1944) . . . . The statute applies only to an assessment that establishes a disregard of duty by the assessors. *L. G. DeFelice & Son, Inc.* v. *Wethersfield*, 167 Conn. 509, 513, 356 A.2d 144 (1975)." (Citations omitted; internal quotation marks omitted.) *Second Stone Ridge Cooperative Corp.* v. *Bridgeport*, supra, 220 Conn. 341–42.

The plaintiff filed an amended complaint, pursuant to § 12-119, alleging that the defendants had grossly overvalued the taxpayers' property. The record fails to reveal any claim by the plaintiff beyond the mere allegation that the assessor overvalued the land on which the Tyler's Cove condominiums are situated. Further, the plaintiff's claims of misfeasance by the assessor; see part III; are unpersuasive, and no claims of nonfeasance exist. Finally, the plaintiff's claim that the assessment was arbitrary is unsupported by the record. The trial court properly concluded that the plaintiff failed to meet its burden of proof under § 12-119.

## III

The plaintiff's final claims on cross appeal are that the trial court improperly failed to find that the assessor failed to apportion the value of the land among the condominium units and found that the board and the assessor did not predetermine the assessed land value. We address these claims in turn.

We apply the following standard of review to both claims. "The trial court's findings are binding upon this

court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . *Crowell* v. *Danforth*, 222 Conn. 150, 156, 609 A.2d 654 (1992); see also *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 220, 435 A.2d 24 (1980)." (Internal quotation marks omitted.) *United Components, Inc.* v. *Wdowiak*, 239 Conn. 259, 263, 684 A.2d 693 (1996).

## A

The plaintiff first claims that the trial court improperly failed to find that the assessor failed to apportion the value of the land among the condominium units. The plaintiff argues that the defendants were required to apportion the value of the real property and common areas as an undivided interest among the individual condominium owners. See General Statutes § 47-79. As proof, the plaintiff notes the different values on the field cards for lakefront and nonlakefront units, as indicated under "land value" on the assessor's field cards. The defendants argue that the "land value" calculation was solely for informational purposes and, thus, they did not violate § 47-79. Our review of the record leads us to conclude that the trial court's factual findings are not clearly erroneous.

## B

The plaintiff finally claims that the trial court improperly found that the board and the assessor did not predetermine the assessed land value. The plaintiff argues that the board assigned values to all property in Mid-

dlebury prior to the revaluation and that such action was outside the scope of its statutory powers. See General Statutes § 12-111. The defendants contend that the plaintiff failed to establish any collusion between the assessor and the board. Our review of the record does not leave us with the definite and firm conviction that a mistake has been committed. See *United Components, Inc.* v. *Wdowiak*, supra, 239 Conn. 263. We conclude that the trial court's findings were supported by the evidence and the pleadings and, thus, were not clearly erroneous.

On the defendants' appeal, the judgment ordering the reduction of the fair market value of the Tyler's Cove property is reversed and the case is remanded with direction to render judgment for the defendants.

In this opinion the other judges concurred.