[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO STRIKE
The plaintiff, John Tanner, in his revised complaint, has alleged three causes of action against the defendant, Darly Custom Tech, Inc. (Darly). The first count alleges a breach of an employment agreement, and the second count alleges breach of an implied covenant of good faith and fair dealing. Darly has moved to strike the third count, which alleges a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. (CUTPA). The motion was orally argued before court.
A motion to strike contests the legal sufficiency of a complaint's allegations to state a claim upon which relief may be granted. NovametrixMedical Systems v. Boc Group, Inc., 224 Conn. 210 (1992). If facts provable under the allegations would support a legally recognizable cause of action, the motion to strike must be denied. Pamela B. v. Ment,244 Conn. 296 (1998).
In evaluating a motion to strike, the court must construe the allegations in the complaint in the light most favorable to the plaintiff. Faulkner v. United Technologies Corp., 240 Conn. 576 (1997). Facts which are well pleaded and those facts which necessarily must be implied from the allegations are taken as admitted, and pleadings must be CT Page 2124 construed broadly and realistically. Doe v. Yale University, 252 Conn. 641
(2000).
In his revised complaint, Tanner alleges that he entered into a written three year employment agreement with Darly, which commenced on November 23, 1998. The agreement included incentive pay provisions based on sales. Tanner further alleges that his employment was terminated by Darly in violation of the employment agreement. In count three of the revised complaint, he alleges a violation of CUTPA by incorporating the above contentions and adding numerous additional allegations. Construing them in the light most favorable to Tanner, these allegations can be summarized as follows:
 (1) Darly encouraged Tanner to solicit sales which Darly could not process; Darly could not provide product samples and did not provide free samples; Darly developed and shipped products from abroad which were inferior and delivered late. (Revised complaint, count three, ¶ 14(a) — (d) (ii).)
 (2) Darly interfered with a relationship between Tanner and a potential customer which resulted in a loss of business. (Id., ¶ 14(d) (iii).)
 (3) Darly interfered with Tanner working on projects which could increase his incentive pay and attempted to reduce or eliminate his incentive pay. (Id., ¶ 14(e) — (g).)
 (4) Darly asked Tanner to misrepresent to customers that its products were made in the United States when component parts were made in foreign countries. (Id., ¶ 14(1).)
 (5) Darly employed accounting practices which resulted in more funds going to a foreign affiliate and less funds available for the United States operation. (Id., ¶ 14(k).)
As a result of the above conduct and practices, Tanner alleges that his contract was breached and he has suffered an ascertainable loss.
 DISCUSSION
Darly's motion to strike is premised on the assertion that Tanner's CT Page 2125 allegations in his CUTPA claim arise out of the employer-employee relationship and that Connecticut courts have held that the employer-employee relationship does not constitute an employer's "trade or commerce" within the meaning of General Statutes § 42-110b, as defined in General Statutes § 42-110a (4).
Tanner contends that the Connecticut Supreme Court has expanded the scope of CUTPA to include claims such as his. Specifically, Tanner points to language in Larsen Chelsey Realty Co. v. Larsen, 232 Conn. 480 (1995) to support his position and argues that the alleged acts of Darly are outside the scope of the employer-employee relationship and involve "trade or commerce."
The pertinent provisions of CUTPA are:
 42-110b (a): No person shall engage in unfair methods of competition and unfair and deceptive acts or practices in the conduct of any trade or commerce.
 42-110g (a): Any person who suffers any ascertainable loss . . . as a result of the use or employment of a method, act or practice prohibited by Section 42-110b
may bring an action. . . .
 42-110a (4): "Trade" and "commerce" mean the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed or any other article, commodity or thing of value in this state.
In Quimby v. Kimberly Clark Corporation, 28 Conn. App. 660 (1992), the Appellate Court, relying in part on several decisions of the United States District Court for the District of Connecticut construing CUTPA, held that the employer-employee relationship did not fall within the definition of trade or commerce. The Appellate Court approved a statement that while employees might be hired to conduct trade or commerce, "the actual employment relationship is not itself trade or commerce for the purpose of CUTPA." Id., 670 (quoting Banerjee v. Robert, 641 F. Sup. 1093,1108 (D. Conn. 1986)); see also Collins v. Gulf Oil Corporation,605 F. Sup. 1519 (D. Conn. 1985).
In Larsen Chelsey Realty Co. v. Larsen, supra, the Supreme Court focused on the following facts. While the defendant was president of the plaintiff realty company, he accepted a position at Pearce, a competing CT Page 2126 realty business. Subsequently, the defendant solicited brokers and business away from the plaintiff to Pearce and sent out a letter stating the plaintiff was going out of business. The trial court, relying onQuimby, had set aside a jury verdict in favor of the plaintiff realty company on a CUTPA count. The Supreme Court reversed the trial court, concluding that:
 the trial court (1) improperly focused on the employer-employee relationship between the plaintiff [realty company] and [the defendant], rather than on [the defendant's] anticompetitive activities that were outside the scope of his employment. . . .
Larsen Chelsey Realty Co. v. Larsen, supra, 232 Conn. 491. The Supreme Court also found that the trial court's reliance on Quimby was misplaced, because the relevant acts in that case took place strictly within the confines of the employer-employee relationship. The LarsenChelsey court did not decide the validity of Quimby, only that it was not apposite. Id., 493 n. 16.
Subsequently, the Connecticut Supreme Court has cited Quimby with approval. United Components, Inc. v. Wdowiak, 239 Conn. 259, 264 (1996). Therefore, as the first step of this analysis, the court holds that as a general matter, under Connecticut law, the scope of CUTPA does not extend to matters involving the employment relationship. This conclusion relies on the above cited cases and more recent decisions. See e.g. Muniz v.Kravis, 59 Conn. App. 704 (2000); Mafcote Industries v. James RiverPaper, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 151800 (January 21, 2000, D'Andrea, J.).
The above conclusion, however, does not complete the analysis. Tanner argues that Larsen Chelsey instructs that even if there is an employment relationship, certain acts of a defendant may be outside that relationship and, therefore, subject to the proscriptions of CUTPA. In this case, Tanner points to his allegations in count three, paragraphs 14 (j) and (k), of the revised complaint (set forth as items 4 and 5 on page 3 of this decision) that Darly falsely represented to customers that all product parts were made in the United States and that accounting practices reduced the amount of money available for United States operations as acts outside the employer-employee relationship, similar to those inLarsen Chelsey. Reading Tanner's complaint most broadly and making all favorable inferences, Tanner is claiming that the above described actions by Darly prevented him from meeting sales goals and incentives which, in turn, led to his termination. CT Page 2127
The court agrees with Tanner's contention that his CUTPA count alleges activities by Darly (specifically, the count three, paragraphs 14(j) and (k) allegations) which took place in connection with Darly's "trade or commerce." Thus, the precise issue raised in this motion is whether an employment relation dispute involving alleged unfair practices occurring within its normal trade and commerce is cognizable under CUTPA, or excluded from CUTPA coverage on the basis of the case law noted above. Since Tanner's complaint can be read to infer that his termination was, in part, caused by the activities specified in count three, paragraphs 14 (j) and (k), a not unreasonable reading of CUTPA statutory language could lead to the conclusion that a viable cause of action has been pleaded. However, the case law under CUTPA, the judicial gloss, if you will, and the legislative background of the statute leads this court to a different conclusion.
To begin with, this case is materially distinguishable from LarsenChelsey. The operative facts in that case involved acts by the defendant which were not only outside the recognizable limits of the employer-employee relationship, but affected interests of the plaintiff which were also outside the employment relationship. These interests were the plaintiff realty company's competitive relations with the other realty company, Pearce. Even though still employed by the plaintiff, the defendant was, in fact, competing with his employer. In the present case, while some of Darly's alleged activities might be construed as outside the employment relationship, the injury alleged by Tanner as a result of those acts, is squarely at the heart of the employer-employee relationship, i.e., the termination of Tanner's employment.
On more than one occasion, our Supreme Court has spelled out a definition of what kind of practice violates CUTPA:
 (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other business persons] . . . .
Hartford Electric Supply Co. v. Allen-Bradley Co., 250 Conn. 334, 368
(1999) (quoting Willow Springs Condominium Assn., Inc. v. Seventh BRTDevelopment Corp., 245 Conn. 1, 43 (1998).). While the above language[1]
CT Page 2128 is, strictly speaking, designed to define what is "unfair, " the language, when it discusses injury, speaks of injury to consumers, competitors and other business persons. The usual definition of a business person is one involved in the purchase and sale of commodities or products or related financial transactions (Merriam-Webster's Collegiate Dictionary (10th Ed. 1998)) and is distinct from either employer or employee.
In reaching a conclusion, the court focuses on the nature of the injury sustained by Tanner. As noted above, the injury he alleges in his complaint is that he was wrongfully terminated from employment. While Tanner includes in his allegations certain activities of Darly which can be construed, for the purposes of this motion, as unfair practices occurring in its trade or commerce, the gist of Tanner's complaint, the actual injury he incurred, is not from those activities but from something which is at the very core of the employer-employee relationship — the loss of employment.
In Burrus v. Allnet Communication Services, Inc., Superior Court, judicial district of Waterbury, Docket No. 125637 (December 7, 1995,McDonald, J.), the plaintiff alleged he accepted an offer of employment by Allnet and left his prior employment to take the new position. Thereafter, the plaintiff alleged, Allnet reneged on its offer because he was an African-American, which conduct was characterized as outrageous and resulted in the intentional infliction of emotional harm. Then Judge McDonald held that the claim arose out of the employer-employee relationship and, relying on Quimby, dismissed the plaintiff's CUTPA cause of action.
More recently, in Jablonski v. Sheldon Precision Co., Superior Court, judicial district of Waterbury, Docket No. 145784 (April 10, 2000,Doherty, J.), the court dismissed a CUTPA claim in somewhat similar circumstances. In that case, the plaintiff, Jablonski, alleged that his employer and his supervisor conspired to conceal, and promoted the sale of, defective and poor quality products. Jablonski, who was quality control manager, refused to sign and file false certifications and allegedly was fired as a result of his failure to take part in these schemes. The court, citing Quimby and Wdowiak, held that the allegations related to the employment relationship between Jablonski and Sheldon Precision and, therefore, the acts complained of did not occur in the conduct of trade or commerce, and the CUTPA count was dismissed. In both of the above cases, the acts claimed as the underpinning for a CUTPA claim were not necessarily part of the employment relationship and, at least in Jablonski, the acts were clearly part of the defendant's regular trade or commerce, even if not so described by the court. CT Page 2129
This court finds the Burrus and Jablonski decisions to be correctly decided. While these cases do not articulate their reasoning in the same fashion as this decision, their holdings fortify this court's conclusion. Under Connecticut precedent, acts within the employment relationship are not committed as part of a business' trade or commerce. The court holds that even when unfair acts within trade or commerce are alleged, if the ultimate injury for which redress is sought occurs within the zone of the employment relationship, a claim under CUTPA will not lie.
The motion to strike the third count is granted.
Adams, J.