WALTER GOODRICH ET AL. *v.* ROBERTA DIODATO
(AC 16411)

Lavery, Schaller and Dupont, Js.

Argued October 30, 1997—officially released April 14, 1998

*John L. Stawicki*, for the appellant (defendant).

*Jeffrey N. Low*, for the appellees (plaintiffs).

*Opinion*

SCHALLER, J. The defendant, Roberta Diodato, appeals from the judgment of the trial court quieting title in favor of the plaintiffs, Walter Goodrich and Lois Goodrich. The plaintiffs sought to quiet title to a strip of land that runs along the boundary of their property and that of the defendant in the town of Montville. The plaintiffs also sought damages for trespass, nuisance and interference with the quiet enjoyment of their property, and an order allowing the plaintiffs to remove the fence and steel rods that the defendant had placed on their property. The defendant raised a special defense, asserting that the plaintiffs' grantors did not own the disputed land at the time they conveyed it to the plaintiffs, and, therefore, that the deed for that parcel was void. The defendant also filed a counterclaim seeking to quiet title and to collect damages for trespass, adverse possession and the conversion of certain shrubs and bushes.

The trial court determined that the plaintiffs proved ownership of the disputed land by record title and that the common boundary line was that claimed by the plaintiffs. The court also determined that the defendant did not establish her claim of adverse possession and that neither party established intentional trespass. On

appeal, the defendant claims that the trial court improperly (1) reformed the common boundary line to a location not claimed by either party, (2) disregarded the legal principle of junior and senior rights in establishing the boundary line, (3) determined that the defendant failed to prove her claim of adverse possession by clear and convincing evidence and (4) determined that the deed conveying the strip of land to the plaintiffs was valid. We affirm the judgment of the trial court.

The following facts are relevant on appeal. The subject properties are part of a residential subdivision developed by Frank Lathrop and John Lathrop on Occum Lane in Montville. That subdivision is delineated in two maps prepared in September and December, 1959, which contained errors and significant discrepancies. The defendant purchased her property at 31 Occum Lane in 1961 by deed from the Lathrops. The deed conveys lot three and the eastern half of lot two in the subdivision to the defendant, and refers to the September, 1959 subdivision map. The plaintiffs purchased their property at 23 Occum Lane from the Lathrops by deed in 1962. The deed conveys lot one and the western twenty feet of lot two to the plaintiffs, and refers to the December, 1959 subdivision map. In 1980, the plaintiffs purchased the remaining twelve foot strip of land in the western half of lot two from the Lathrops by quitclaim deed.

From 1962 to 1989, the relationship between the neighboring parties was friendly, and they often visited each other's properties. In 1989, however, while clearing bushes and tree stumps from their land, the plaintiffs discovered that part of the defendant's tool shed was on their property. The plaintiffs notified the defendant of the situation and asked her to remove her shed from their property. In response, the defendant hired a land surveyor, John Wells, who examined the parties' deeds,

the deeds of other subdivision lot owners, the two sub-division maps and Montville land records. Wells discovered discrepancies in the deeds and the two subdivision maps. Specifically, the defendant's deed conveyed lot three and the "easterly half of Lot [no.] 2," and purported to convey 120 feet of frontage property on Occum Lane to the defendant. The September, 1959 subdivision map referred to in the defendant's deed, however, depicts the defendant's property on Occum Lane as totaling only 106.5 feet of frontage. Unable to reconcile these differences, Wells simply ignored the September, 1959 map and the 1980 conveyance of the strip of land to the plaintiffs. He concluded that the boundary line ran along the western border of the defendant's driveway and marked this line by placing steel rods on the plaintiffs' property. The defendant also erected a fence along a portion of this boundary.

The plaintiffs also hired a surveyor, Robert Mullen, to establish the location of the common boundary line. Relying on the parties' deeds, the deeds of other subdivision lot owners, the two subdivision maps, Montville land records, state highway maps and physical evidence obtained from on-site inspection, Mullen determined that the common boundary line ran down the middle of lot two, dividing the lot into two equal parcels and passing through the defendant's driveway. Mullen also became aware of the discrepancies in the deeds and the subdivision maps. Instead of simply reapportioning the discrepancies in favor of one party, as Wells did, Mullen evenly apportioned the discrepancies among all of the lot owners to locate the common boundary line.

On the basis of all of the evidence before it, the trial court found that the Lathrops conveyed only 106.5 feet of total frontage to the defendant in 1961, thus upholding the plaintiffs' claim that the common boundary line ran down the middle of the defendant's driveway. The trial court also found that after lot one and the western

twenty feet of lot two were conveyed to the plaintiffs in 1962, a strip of land between the western twenty feet and the eastern half of lot two remained in the possession of the Lathrops, and that this land was finally conveyed to the plaintiffs in 1980.

I

The defendant first claims that the trial court improperly reformed the common boundary line to a position not claimed by either party. We disagree.

The defendant asserts that the common boundary line runs along the western border of her driveway and continues in a straight line to the rear of her property, incorporating all of the disputed land. The plaintiffs, on the other hand, assert that the boundary line divides lot two into two equal parcels and runs through the defendant's driveway. The plaintiffs, however, acknowledge the defendant's longtime use of the driveway and stated at trial that they were not claiming the portion of the strip of land on which the defendant's driveway was located. The trial court's establishment of the common boundary, arrived at after considering all of the circumstances surrounding the conveyances and the plaintiffs' concession that they did not want to claim a portion of the defendant's driveway, was within the relief requested by the plaintiffs.[1] Contrary to the defendant's assertion, the trial court reformed the boundary to a location that was explicitly claimed by the plaintiffs. The trial court's decision, therefore, accorded with our case law, which states that in resolving a boundary dispute, a trial court must identify the boundary line along a course for which there is a supporting basis in its findings and in the prayers for relief. See *F. & AK, Inc.* v. *Sleeper*, 161 Conn. 505, 512, 289 A.2d 905 (1971). In the present case, there were both.

---

[1] In their prayer for relief, the plaintiffs made a general request for the establishment of a common boundary between the parties.

## II

The defendant next claims that the trial court improperly disregarded the legal principle of junior and senior rights in establishing the common boundary line. We disagree.

In C. Brown, W. Robillard & D. Wilson, Boundary Control and Legal Principles (4th Ed. 1995) § 11.2, p. 253, the principle of junior and senior rights is described as follows: "When a portion of a tract of land is sold, two parcels are created, a new parcel and the remainder of the parent parcel. Because the new parcel must receive all of the land described, it is called the senior deed, and the remainder, at the time of conveyance, becomes the junior deed." "As between private parties, a junior grant, in conflict with a senior grant, yields to the senior grant." Id., § 11.1, p. 250. This principle appears to be nothing more than a restatement of the well established rule that a party cannot convey that which he no longer possesses. *Gioia* v. *Annunziata*, 102 Conn. 52, 56, 127 A. 921 (1925). In cases where there are ambiguities about what was intended to be conveyed to the holder of the oldest deed, that rule cannot resolve the dispute. Instead, in cases like the present case where the deed and the map referenced therein contain ambiguities, the trial court must look to the intention of the parties to determine where the boundary line lies. *Lake Garda Improvement Assn.* v. *Battistoni*, 160 Conn. 503, 511, 280 A.2d 877 (1971). "The question of the parties' intention as to the division line was one of fact for the trial court and we cannot disturb its finding if it is based on evidence of the surrounding circumstances and the situation of the property which legally supports the finding." *F. & AK, Inc.* v. *Sleeper*, supra, 161 Conn. 511. We have fully reviewed the record, trial transcript, exhibits and briefs in this appeal and conclude that the trial court's establishment of the boundary line was firmly supported by the evidence.

## III

The defendant next claims that the trial court improperly determined that she failed to prove her adverse possession claim by clear and convincing evidence. We disagree.

"In order to establish adverse possession, the claimant must oust an owner of possession and keep such owner out uninterruptedly for fifteen years by an open, visible and exclusive possession under a claim of right with intent to use the property as his own and without the consent of the owner." *Clark* v. *Drska*, 1 Conn. App. 481, 485, 473 A.2d 325 (1984). "Adverse possession must be proven by the claimant . . . by clear and convincing evidence." (Citations omitted.) *Oak Leaf Marina, Inc.* v. *Ertel*, 23 Conn. App. 91, 93, 579 A.2d 568, cert. denied, 216 Conn. 827, 582 A.2d 206 (1990). "In the final analysis, whether possession is adverse is a question of fact for the trier." *Whitney* v. *Turmel*, 180 Conn. 147, 148, 429 A.2d 826 (1980).

In this case, the trial court concluded that the defendant failed to prove that her possession was open, adverse and exclusive. Both parties worked and played on the disputed tract of land. The defendant never used the property as though it belonged to her alone, nor did she use it to the exclusion of the plaintiffs. In fact, a pathway was cleared between the hedges so that the parties could have access to each other's property. In addition, before the dispute arose, the defendant's husband told the plaintiffs that he thought the common boundary line ran somewhere to the east of the defendant's hedges. Although much of the evidence was disputed, "it is axiomatic that this court cannot retry the facts or pass on the credibility of witnesses." *Peters* v. *Pearl*, 37 Conn. App. 153, 156, 655 A.2d 262, cert. denied, 233 Conn. 908, 658 A.2d 980 (1995). We are satisfied that the trial court's determination that the defendant

did not demonstrate adverse possession by clear and convincing evidence was not clearly erroneous or otherwise improper as a matter of law.

## IV

The defendant's final claim is that the trial court improperly determined that the Lathrops possessed the disputed land when they conveyed it to the plaintiffs in 1980, and, therefore, the deed for that parcel was valid. We disagree.

We first address the plaintiffs' assertion that this issue should not be reviewed on appeal because the defendant did not state in her special defense or counterclaim that her ouster claim was made pursuant to General Statutes § 47-21. The plaintiffs cite Practice Book § 109A (a), now Practice Book (1998 Rev.) § 10-3 (a), which provides that "[w]hen any claim made in a complaint, cross complaint, special defense, or other pleading is grounded on a statute, the statute shall be specifically identified by its number . . . ." We have held, however, that the requirement that the pleader specifically identify the statute on which he relies is directory, rather than mandatory. *Rowe* v. *Godou*, 12 Conn. App. 538, 542, 532 A.2d 978 (1987), rev'd on other grounds, 209 Conn. 273, 550 A.2d 1073 (1988). The purpose of this rule is to promote the full and open disclosure of legal claims by identifying and narrowing the issues before the court. Id., 543–44. Although the defendant did not specifically refer to § 47-21 in her special defense, the defendant sufficiently apprised the trial court of her special defense of ouster. Accordingly, we will address the merits of this issue.

The defendant claims that she ousted the Lathrops from the disputed land in 1962, eighteen years before they deeded the parcel to the plaintiffs in 1980. She

asserts, therefore, that the Lathrops were not in possession of that land at the time of the conveyance, and the deed is void.

"The possession necessary to constitute an ouster under § 47-21 is not some fleeting or ephemeral technical invasion of the property *nor the occasional technical invasion tolerated by adjoining neighbors on good terms with one another.* Rather, it is possession of a character such that it would, if continued for the requisite period, ripen into a title by adverse possession." (Emphasis added.) *Loewenberg* v. *Wallace,* 147 Conn. 689, 694, 166 A.2d 150 (1960).

The trial court, in its memorandum of decision, found that the defendant failed to establish that she ousted the Lathrops before they conveyed the disputed land to the plaintiffs in 1980. In addressing the claim of ouster, the trial court determined that "[t]hat portion of lot two situated between the easterly one-half of that parcel, which was conveyed to the defendant, and the westerly twenty feet of that parcel, which was included in the conveyance to the plaintiffs, *remained in the ownership of the Lathrops.* . . . The testimony and exhibits do not support the proposition that the defendant and her family made an open, notorious and hostile use of the land to the immediate west of the boundary line fixed by Mullen so as to put [the plaintiffs] *or anyone else* on notice that a claim to title by adverse possession was being asserted." (Emphasis added.)

Since we have already concluded that the trial court properly determined that the defendant failed to prove the elements of adverse possession, we conclude that the trial court's determination that the defendant also failed to prove the possession necessary to constitute an ouster under § 47-21 was not improper.

The judgment is affirmed.

In this opinion the other judges concurred.