### SFP TISCA *v.* ROBIN HILL FARM, INC.
### (SC 15803)

Borden, Berdon, Katz, Palmer and McDonald, Js.

Argued January 20—officially released May 12, 1998

*Allen Gary Palmer*, for the appellant-appellee (plaintiff).

*Scott R. Lucas*, for the appellee-appellant (defendant).

*Opinion*

MCDONALD, J. The sole issue in the plaintiff's appeal is whether the trial court correctly determined that the absence from trial of the plaintiff's employee for business reasons was procured by the plaintiff for purposes of the admissibility of the employee's deposition pursuant to Practice Book § 248 (1) (d) (2), now Practice Book (1998 Rev.) § 13-31 (a) (4) (B).[1] We hold that under the circumstances of this case the plaintiff did not procure the absence of its witness. Accordingly, we reverse that portion of the trial court's judgment holding that the deposition was improperly admitted. The issue in the defendant's cross appeal is whether the trial court correctly determined that the plaintiff had neither breached its contract nor violated the Home Improvement Act. General Statutes § 20-418 et seq. We affirm the trial court's judgment as to the counterclaim.

The following facts are not in dispute. The plaintiff, SFP Tisca (Tisca), is a French company whose principal place of business is France. Tisca sells custom handmade carpeting. The defendant, Robin Hill Farm, Inc.

[1] Practice Book § 248 (1) (d), now Practice Book (1998 Rev.) § 13-31 (a) (4), provides in relevant part: "The deposition of a witness other than a person falling within the scope of (b) hereof, whether or not a party, may be used by any party for any purpose if the court finds . . . 2. that the witness is at a greater distance than thirty miles from the place of trial or hearing, or is out of the state and will not return before the termination of the trial or hearing, unless it appears that the absence of the witness was procured by the party offering the deposition . . . ."

(Robin Hill), is a corporation organized to enable its principal, Magnus Lindholm, to purchase real estate in Connecticut.

In 1989, while in Paris, Lindholm hired a Parisian decorator to assist him with the interior design of his home in Greenwich, Connecticut. The interior decorator recommended that Tisca provide the carpeting for this home, and Robin Hill subsequently contracted with Tisca for the carpeting. Robin Hill paid Tisca 75,000 French francs in partial payment on a total invoice of 215,376.53 francs, but refused to pay the remaining 140,376.53 francs because Lindholm alleged that the carpet in one room of his home, approximately 15 to 20 percent of the entire order, had a tear nearly two feet long.

Tisca commenced this action against Robin Hill in December, 1992, claiming damages for breach of contract and unjust enrichment. Robin Hill admitted receipt of the carpet, partial payment and the existence of a contract, but denied liability on the remainder of the contract payments. Robin Hill filed a counterclaim alleging breach of contract by the plaintiff and violation of the Home Improvement Act; General Statutes § 20-418 et seq.; which, Robin Hill claimed, constituted a per se violation of the Connecticut Unfair Trade Practices Act (CUTPA). General Statutes § 42-110a et seq.

When it became apparent that Tisca would be unable to have one of its officers or employees present in the United States at the trial scheduled for September 29, 1995, it moved, unopposed, for a continuance. Robin Hill did not dispute Tisca's claim that Tisca had tried to schedule the trial for the end of October to mid-November when an employee was to be in the United States. The trial date, however, was set for December 12, 1995.

In preparation for the absence at trial of a company representative, Tisca, on November 13, 1995, in Stamford, Connecticut, deposed Pierre-Louis Juillet. Juillet, who is from France, described himself as the export sales manager of Tisca. Lindholm and the attorney for Robin Hill were present at the deposition and Robin Hill's attorney engaged in extensive cross-examination and recross-examination of Juillet. Tisca then moved pursuant to Practice Book § 248 (1) (d) (2), now Practice Book (1998 Rev.) § 13-31 (a) (4) (B), that Juillet's deposition be admitted into evidence at the trial scheduled for December 12, 1995. The trial court ordered that a hearing be held on the motion on December 12, and referred the matter to an attorney trial referee (attorney referee) for trial on the same day, pursuant to General Statutes § 52-434 (a) and Practice Book § 428 et seq., now Practice Book (1998 Rev.) § 19-1 et seq.

Robin Hill argued before the attorney referee that the deposition was inadmissible because Tisca had procured the absence from trial of its own witness, contrary to the requirements for admissibility set forth in Practice Book § 248 (1) (d) (2).[2] Robin Hill claimed that, in the absence of exceptional circumstances, Tisca's business-related decision to forgo the presence of a company representative precluded the deposition's admission into evidence. Tisca argued that it did not procure the absence of its own witness. The attorney referee granted Tisca's motion to admit the deposition.

After a hearing, the attorney referee recommended that the trial court render judgment for Tisca as to the complaint for the balance of the contract, 140,376.53 francs. At the time the trial court rendered judgment, this amounted to approximately $26,000.

Robin Hill also presented evidence at the hearing on its counterclaim before the attorney referee, claiming,

---

[2] See footnote 1 of this opinion.

in the first count, that Tisca breached its contract by providing torn carpet and, in the second count, that Tisca violated the Home Improvement Act. The attorney referee found that there was no credible evidence of such a tear and recommended judgment for Tisca as to the breach of contract count of the counterclaim. The attorney referee also found that the contract for the sale of this carpeting did not include its installation. Because the Home Improvement Act exempts sales of goods not installed by the seller,[3] the attorney referee recommended that judgment be rendered for Tisca as to the second count of the counterclaim.

Robin Hill moved to correct the attorney referee's report and filed exceptions to the factual findings and objections to the acceptance of the report. The trial court rejected the attorney referee's report as to Tisca's breach of contract claim. The trial court held that the deposition had been improperly admitted because Tisca's voluntary business decision to forgo the appearance at trial of a company representative was tantamount to procuring the absence of its own witness. The trial court then rendered judgment for Robin Hill as to the complaint because Tisca had introduced no other evidence.

The trial court accepted the attorney referee's report as to both counts of the counterclaim and rendered judgment for Tisca as to the counterclaim on the basis of the attorney referee's findings of fact. Tisca appealed and Robin Hill cross appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book

---

[3] General Statutes § 20-419 (4) provides in relevant part: " 'Home improvement' does not include . . . (B) the sale of goods by a seller who neither arranges to perform nor performs, directly or indirectly, any work or labor in connection with the installation or application of the goods or materials . . . ."

§ 4023, now Practice Book (1998 Rev.) § 65-1, and General Statutes § 51-199 (c).

I

The central issue in Tisca's appeal is whether Juillet's deposition was properly admissible under Practice Book § 248 (1) (d) (2).[4] Robin Hill argues that the attorney referee's application of § 248 was a matter of law. Tisca claims that the attorney referee's finding that Tisca did not procure the absence from trial of its own witness is a finding of fact that the trial court cannot reject except in rare circumstances.

The admissibility of a deposition into evidence under § 248 is a ruling on evidence that may be reviewed by the trial judge on an objection to the acceptance of the report. Practice Book §§ 440 and 443, now Practice Book (1998 Rev.) §§ 19-14 and 19-17. The trial court in such an instance is the effective arbiter of the law. *Seal Audio, Inc.* v. *Bozak, Inc.*, 199 Conn. 496, 510, 508 A.2d 415 (1986). If the attorney referee's ruling was not "legally and logically correct," the trial court may reject the report. *Elgar* v. *Elgar*, 238 Conn. 839, 845, 679 A.2d 937 (1996); see Practice Book § 443, now Practice Book (1998 Rev.) § 19-17.

We conclude that the trial court improperly reversed the attorney referee's granting of the motion to admit the deposition because it applied an incorrect definition of "procure." A party does not procure the absence of its own witness merely by failing to produce the witness at trial.

Although our case law contains no definition of "procure" for the purposes of § 248, "[w]here a state rule is similar to a federal rule we review the federal case law to assist our interpretation of our rule. *Arduini* v. *Automobile Ins. Co. of Hartford*, 23 Conn. App. 585,

---

[4] See footnote 1 of this opinion.

589, 583 A.2d 152 (1990)." *Pelarinos* v. *Henderson*, 34 Conn. App. 726, 730, 643 A.2d 894, cert. denied, 231 Conn. 909, 648 A.2d 155 (1994). Rule 32 (a) (3) (B) of the Federal Rules of Civil Procedure provides that a deposition is admissible if a deponent is more than 100 miles away "unless it appears that the absence of the witness was procured by the party offering the deposition." Federal case law supports Tisca's position in this case, and we adopt the view of the federal courts.

The federal courts have consistently held that a party's offer of his or her own deposition does not in itself indicate that the party had procured his or her own absence. See generally 7 J. Moore, Federal Practice (3d Ed. 1997) § 32.24 [4] and [5].[5] In *Richmond* v. *Brooks*, 227 F.2d 490, 492–93 (2d Cir. 1955), the Second Circuit Court of Appeals held that the plaintiff's deposition, her sole proof at trial, should be admissible. In that case, Judge Clark, who played a major role in the adoption of the Federal Rules of Civil Procedure, observed that then rule 26 would not require a plaintiff to "live in [an expensive jurisdiction] . . . awaiting the uncertain call of a case for trial . . . ." Id., 493. He pointed to *Hyam* v. *American Export Lines, Inc.*, 213 F.2d 221, 223 (2d Cir. 1954), where Judge Harlan, later to become Justice Harlan, stated: "The federal courts are open to foreign suitors as to others, and procedural rules are not to be construed in such fashion as to impose conditions on litigants which in their practical effect amount to a denial of jurisdiction." In *Weiss* v. *Weiner*, 10 F.R.D. 387, 389 (D. Md. 1950), the District Court for the District of Maryland admitted the defendant's deposition in his absence. The court interpreted the word "procured" to mean that "a party had collusively instigated or induced a witness to remove himself from being subjected to a subpoena to testify at the trial, or at least had unfairly

[5] James W. Moore was the author of the leading text on the Federal Rules of Civil Procedure.

and for an improper purpose deliberately absented himself shortly before the trial from the jurisdiction so he could not be examined."[6] Id. In *Houser* v. *Snap-On Tools Corp.*, 202 F. Sup. 181, 189 (D. Md. 1962), the court held that "[a] corporate party may take the depositions of its officers as witnesses, and use these at trial." The court stated that "procuring absence and doing nothing to facilitate presence are quite different things . . . ." Id. In *Glaverbel Societe Anonyme* v. *Northlake Marketing & Supply, Inc.*, 139 F.R.D. 368, 369–70 (N.D. Ind. 1991), the court used a totality of the circumstances test in holding that a corporate party may use depositions of its overseas employees in lieu of the employees' appearance.

The federal courts have consistently held that the absence alone from trial of a plaintiff's own employee does not indicate procurement. "There is a distinction between procuring the absence of a witness and doing nothing to facilitate his or her presence." 7 J. Moore, supra, § 32.24 [4] [a]. We therefore hold that the word "procured" in the context of Practice Book § 248 "connotes that a party has collusively instigated or induced a witness to remove himself or herself from being amenable to testify at trial, or at least has unfairly and for an improper purpose deliberately arranged for the witness to absent himself or herself from the jurisdiction to preclude being examined." Id., § 32.24 [4] [b]. We conclude that the circumstances of this case and the subordinate findings of fact support the attorney

---

[6] The court in *Weiss* set forth four factors in determining whether a party had "procured" his or her own absence: (1) whether it was a disadvantage to the party not to have his or her own evidence heard by the jury; (2) whether the opposing party was deprived of an opportunity to cross-examine the witness; (3) whether the witness' appearance, demeanor or behavior in giving the deposition was such that it would have been advantageous to have the witness present for the jury to observe; and (4) the relative importance of the witness' deposition to the nature of the case as a whole. *Weiss* v. *Weiner*, supra, 10 F.R.D. 388.

referee's ruling. Tisca neither "collusively instigated" nor "induced a witness to remove himself" from the jurisdiction to preclude being examined. See id.

Tisca is a French company, and Juillet is from France. Juillet testified at his deposition that none of the people, other than himself, who could testify at trial on Tisca's behalf were available. He stated that his father, the former proprietor of Tisca, was retired and that B. Gressard, Tisca's business manager, spoke poor English, thereby making it impossible for Tisca to send an employee other than Juillet who could testify in English. Juillet was to be in Europe on business at the time of trial, and Tisca had attempted without success to obtain a trial date when Juillet would be in the United States. Robin Hill neither made nor attempted to make a showing of Tisca's bad faith or Tisca's efforts to avoid cross-examination of Juillet. Here, a deposition was held, during Juillet's visit to the United States, in the presence of Lindholm and counsel for Robin Hill, who subjected Juillet to extensive cross-examination.

Juillet's deposition testimony was offered mainly to identify and admit as a business record Tisca's file containing its documents relating to Robin Hill. He also testified that Tisca did not install carpets. Robin Hill suggests that the attorney referee should have heard Juillet testify personally in order to judge his credibility. Robin Hill, however, never made this argument before the attorney referee. Instead, it attacked only Juillet's lack of personal knowledge of Tisca's file on the basis that Juillet had not been employed by Tisca at the time the parties entered into the contract. The attorney referee found that Juillet was sufficiently familiar with Tisca's file to testify about its contents. The attorney referee could properly determine the extent of Juillet's personal knowledge from his testimony from the deposition, during which Juillet was extensively cross-examined on precisely this issue. This single ground for

attacking credibility is insufficient to mandate Juillet's presence before the attorney referee. Under these circumstances, the trial court incorrectly determined that Juillet's deposition should have been excluded from evidence. Because Robin Hill raised other claims in its objection to the attorney referee's report, the case must be remanded for consideration of those remaining issues.

## II

We must also determine whether the trial court correctly rendered judgment for Tisca as to Robin Hill's counterclaim.

The attorney referee's findings amply support her conclusion regarding the first count of the counterclaim that Robin Hill failed to satisfy the burden of proving a breach of contract. Lindholm claimed that although the carpet installers notified him of a gash in the carpet, he nevertheless ordered them to install it. Tisca made repeated attempts to obtain payment of its invoice from October, 1989, to March, 1990. When Lindholm finally contacted Tisca about the alleged tear, it was eight months after Tisca had sent the company's first invoice. Tisca offered a 10 percent reduction of the price, which Lindholm rejected. Tisca also offered to send a qualified inspector to the site. Although Lindholm was contacted by someone from New York concerning evaluation of the damage, this evaluation never took place. Finally, Lindholm was to have provided photographs of the damage to Tisca, but he never did so.

At trial, Robin Hill did not offer into evidence any photographs of the damage or testimony from other persons who might have observed the damage. The attorney referee found that Lindholm's testimony, in and of itself, lacked sufficient credibility to establish his claim of damage to the goods. It properly belongs to the finder of fact to assess the credibility of witnesses.

*Vesce* v. *Lee*, 185 Conn. 328, 335, 441 A.2d 556 (1981). The attorney referee's findings of fact were not clearly erroneous and amply support a finding for Tisca as to the breach of contract count of Robin Hill's counterclaim.

With regard to the second count of the counterclaim, the attorney referee's finding that the contract for carpet did not include installation is amply supported in the record. Tisca's estimate for and description of the goods does not mention any installation, nor was the installation charged or noted on the invoice. Juillet testified that Tisca is not in the business of installation of its goods. Nothing in Tisca's file indicates that Tisca was to perform the installation or that it did perform the installation. Lindholm testified that he believed that installation was included in the purchase price, but the attorney referee found that there was "absolutely no documentary evidence" to support such a belief and that Lindholm "was not convincing" on this issue. Since the Home Improvement Act exempts from its purview sellers who do not install the goods, the judgment of the trial court as to the second count of the counterclaim is affirmed.

The judgment is reversed only as to the complaint and the case is remanded to the trial court for further proceedings in accordance with this opinion; the judgment is affirmed as to the counterclaim.

In this opinion the other justices concurred.