## JOHN C. HUTCHINSON ET AL. *v.* TOWN OF ANDOVER
## (AC 16859)

Spear, Sullivan and Freedman, Js.

Argued April 2—officially released August 11, 1998

*Julia Morris Paul*, with whom was *Stanley Falkenstein*, for the appellant (defendant).

*Mitchel E. Kallet,* for the appellees (plaintiffs).

*Opinion*

SPEAR, J. The defendant, the town of Andover, appeals from the judgment of the trial court enjoining the town from causing drainage of surface water from a public road onto the plaintiffs' property in violation of General Statutes § 13a-138 (a).[1] The defendant claims that the trial court improperly (1) refused to weigh equitable considerations, including the cost to the defendant to remedy the drainage problem, in determining whether the drainage system caused the least amount of damage to the plaintiffs' property, (2) relied on outdated tests in finding unacceptably high levels of sodium in the plaintiffs' well water and (3) allowed the plaintiffs' expert to testify as to the value of the subject property and awarded a fee for his services when the expert was not a licensed real estate appraiser. We affirm the judgment of the trial court.

The trial court made the following findings of fact. On August 29, 1959, the plaintiffs acquired several acres of property on Bunker Hill Road, a road maintained by the town. The plaintiffs' property abuts the southern edge of Bunker Hill Road for a distance of 2300 feet to the road's intersection with the Hop River. The town has periodically resurfaced Bunker Hill Road using a material known as chip seal. In addition, during winter storms, the town spreads sand mixed with salt on Bunker Hill Road.

---

[1] General Statutes § 13a-138 provides in relevant part: "(a) Persons authorized to construct or to repair highways may make or clear any watercourse or place for draining off the water therefrom into or through any person's land so far as necessary to drain off such water and, when it is necessary to make any drain upon or through any person's land for the purpose named in this section, it shall be done in such way as to do the least damage to such land.

(b) Nothing in this section shall be so construed as to allow the drainage of water from such highways into, upon, through or under the yard of any dwelling house . . . ."

Prior to 1959, the town created six drainage sites on Bunker Hill Road that have caused surface water on Bunker Hill Road to drain onto the plaintiffs' property. The velocity and volume of this flow has caused the removal of topsoil, and further soil erosion by scouring and channeling the land. In addition, portions of the road surface, chip seal and road sediment have been carried by this surface flow more than 400 feet into the plaintiffs' property. The water discharged onto the plaintiff's property also causes the property to the rear of their house to be wet and diminishes its use for recreation.

The plaintiffs' household water is supplied by a 140 foot deep well. The well water had been infiltrated as a result of runoff of road salt. This salt, which is carried off by surface water into drainage culverts, ditches and pools constructed by the town, mixes with the bedrock causing a leaching out of iron and manganese. As a result, the household water contains unacceptably high levels of iron, manganese and sodium.

I

The defendant first claims that the trial court improperly failed to weigh equitable considerations, including the cost of remediation, in determining whether the drainage from Bunker Hill Road was done in such a way as to do the least damage to the plaintiffs' property. We disagree.

At trial, the plaintiffs conceded that drainage onto their property was necessary, but contended that the present drainage system was not constructed or maintained to do the least amount of damage to their property. The plaintiffs proposed that the surface water be captured at the easternmost drainage site and piped under the road in a westerly direction to the lowest portion of the Hutchinson property and discharged into a sediment basin on the property.

The trial court concluded that "the construction of the leak off at [the easternmost drainage cite] and the construction of cross culverts draining onto the plaintiffs' property was done for the ease of construction and not for the purpose of causing the least damage to the plaintiffs' property." The trial court issued an injunction prohibiting the town from constructing or maintaining any drainage onto the plaintiffs' property east of [one of the drainage sites]. In doing so, the court stated that "it would be improper for the court to consider the relative cost to the town of the plaintiffs' and the defendant's remedial proposals if the execution of one of the proposals would cause less damage to the plaintiffs' property." The defendant maintains that § 13a-138 (a) should be interpreted to require a balancing between the least property damage and other equitable considerations, such as cost.

"Our Supreme Court recently set forth the governing principles for our standard of review as it pertains to a trial court's discretion to grant or deny a request for an injunction: 'A party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law. . . . A prayer for injunctive relief is addressed to the sound discretion of the court and the court's ruling can be reviewed only for the purpose of determining whether the decision was based on an erroneous statement of law or an abuse of discretion. . . . Therefore, unless the trial court has abused its discretion, or failed to exercise its discretion . . . the trial court's decision must stand.' . . . *Advest, Inc.* v. *Wachtel*, 235 Conn. 559, 562–63, 668 A.2d 367 (1995)." *Raph* v. *Vogeler*, 45 Conn. App. 56, 62–63, 695 A.2d 1066, cert. denied, 241 Conn. 920, 696 A.2d 342 (1997).

The trial court properly construed § 13a-138 (a). "The purpose of statutory construction is to give effect to the intended purpose of the legislature. *Dos Santos* v.

*F. D. Rich Construction Co.*, 233 Conn. 14, 20, 658 A.2d 83 (1995); *Vaillancourt* v. *New Britain Machine/Litton,* 224 Conn. 382, 390, 618 A.2d 1340 (1993); *Rose* v. *Freedom of Information Commission,* [221 Conn. 217, 225, 602 A.2d 1019 (1992)]. If the language of a statute is plain and unambiguous, we need look no further than the words actually used because we assume that the language expresses the legislature's intent. *Dos Santos* v. *F. D. Rich Construction Co.,* supra, 20; *American Universal Ins. Co.* v. *DelGreco,* 205 Conn. 178, 193, 530 A.2d 171 (1987)." *Office of Consumer Counsel* v. *Dept. of Public Utility Control,* 234 Conn. 624, 642, 662 A.2d 1251 (1995). The language of § 13a-138 (a) is clear and unambiguous. It provides that the drainage "shall be done in such way as to do the least damage to such land." The statute does not provide for a balancing test that weighs the least damage against the least expense and other considerations that the town claims.[2] The defendant cites no authority that requires such a balancing test when the issue is the least damage to the land, and we decline to interpret the statute to require such a test.

Alternative drainage systems and the facts attendant thereto are considered with respect to whether it is necessary for a municipality to divert water onto a private owner's land. Our Supreme Court has said that the statute "permits drains to be built only when *necessary,* and if there is a reasonable alternative course open, that course must be taken." (Emphasis added.) *Postemski* v. *Watrous,* 151 Conn. 183, 188, 195 A.2d 425 (1963). Here, there is no dispute that it is necessary for the town to divert some water onto the plaintiffs' land, and the only issue is which system will cause the least damage to the land.

---

[2] The defendant claims that the court should have considered the defendant's public safety responsibilities, prudent alternative drainage systems, environmental damage, and the health and welfare of the town residents.

In applying the least damage aspect of the statute, we are also mindful that "statutes in derogation of private rights should be strictly construed . . . ." *Spring* v. *Constantino*, 168 Conn. 563, 570, 362 A.2d 871 (1975). The common-law rule provides that a person cannot gather surface water on his or her own land in an artificial volume and turn it onto a neighbor's land in an increased volume to the neighbor's injury. This rule also applies to governmental agencies engaged in highway maintenance. Section 14a-138 (a) limits the liability for such water diversion only where the party charged with maintaining the highway complies with the statute by draining the water in a manner that causes the least damage to the affected land. *Postemski* v. *Watrous*, supra, 151 Conn. 187–88.

The trial court properly applied the plain language of § 13a-138, and the court's findings support its decision to grant injunctive relief. Therefore, we conclude that the trial court did not abuse its discretion.

II

The defendant next claims that the trial court improperly found that the plaintiffs' well water contained unacceptably high levels of sodium caused by the road salt in the runoff. We disagree.

The trial court found that the plaintiffs' "well water has been infiltrated as a result of runoff of road salt spread by the town on Bunker Hill Road during winter storms. . . . While the duration of this problem is uncertain, the court finds that the presence of the unacceptably high levels of these minerals in the plaintiffs' water supply is a direct consequence of the town's use of salt, the gathering of the salt in road surface water runoff, and the collection of this runoff at drainage sites constructed by the town." The defendant claims that the 1990 and 1993 tests relied on by the trial court could not support a finding of excessive sodium in the well

water as of the time of trial in 1996, especially in view of the evidence of reduced use of road salt during the three years preceding the trial.

" 'The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . *Crowell* v. *Danforth*, 222 Conn. 150, 156, 609 A.2d 654 (1992); see also *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 220, 435 A.2d 24 (1980).' . . . *United Components, Inc.* v. *Wdowiak*, 239 Conn. 259, 263, 684 A.2d 693 (1996)." *Tyler's Cove Assn., Inc.* v. *Middlebury*, 44 Conn. App. 517, 527–28, 690 A.2d 412 (1997).

It is axiomatic that the credibility of witnesses, the weight to be given to evidence and the inferences to be drawn from the evidence are all matters for the trier of fact. *SFP Tisca* v. *Robin Hill Farm, Inc.*, 244 Conn. 721, 731, 711 A.2d 1175 (1998); *Goodrich* v. *Diodato*, 48 Conn. App. 436, 442, 710 A.2d 818 (1998); *Suarez-Negrete* v. *Trotta*, 47 Conn. App. 517, 520, 705 A.2d 215 (1998). The evidence showed that the town used road salt during the winter months, and the trial court had the right to draw reasonable inferences from all of the evidence with respect to the road salt infiltration in the plaintiffs' well water.

The trial court's finding is supported by the record, and we are not left with a firm and definite conviction that a mistake has been committed.

III

Finally, the defendant claims that the trial court improperly allowed the plaintiffs' expert witness to testify as to the value of the plaintiffs' property and improperly awarded the witness a fee because the witness was not a licensed real estate appraiser. These claims are without merit.

The trial court allowed Gene Sammartino, a real estate developer and broker, to testify as to the diminution in value of the plaintiffs' property caused by the drainage of surface water through the property. The defendant objected on the ground that General Statutes § 20-501 prohibits an unlicensed individual from acting as a real estate appraiser. The trial court allowed the witness to testify, finding that the witness was competent to testify as an expert based on his education, training and experience. The court further found that nothing in § 20-501 prohibited the court from hearing the witness' testimony.

" 'The trial court has wide discretion in ruling on the qualification of expert witnesses and the admissibility of their opinions. . . . The court's decision is not to be disturbed unless [its] discretion has been abused, or the error is clear and involves a misconception of the law. . . . Generally, expert testimony is admissible if (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues.' . . . *State* v. *Kemp*, 199 Conn. 473, 476, 507 A.2d 1387 (1986)." *Eisenbach* v. *Downey*, 45 Conn. App. 165, 177, 694 A.2d 1376, cert. denied, 241 Conn. 926, 696 A.2d 1264 (1997).

Section § 20-501 (a) provides in relevant part that "[n]o person shall act as a real estate appraiser or provisional appraiser or engage in the real estate appraisal

business without the appropriate certification, license, tenured license or provisional license issued by the commission . . . ." General Statutes § 20-500 (11) defines "real estate appraiser" as "a person engaged in the business of estimating the value of real estate for a fee or other valuable consideration."

Section 20-501 is a licensing statute and does not preclude a witness from testifying as to his opinion of the diminution in value of the plaintiffs' property, where the trial court found that the witness' education, training and experience qualified him to testify as an expert and the defendant points to no evidence that showed that Sammartino was engaged in the *business* of real estate appraising as defined in § 20-500 (11).

Consequently, we conclude that the trial court did not abuse its discretion in allowing the testimony. Because the allowance of the testimony was not improper, the trial court properly allowed the expert witness fee.

The judgment is affirmed.

In this opinion the other judges concurred.